Boynton, J.
The original action was brought by the plaintiff to recover the possession of land in the occupancy of the defendants. The trial resulting in a verdict for the plaintiff, compensation for lasting and valuable improvements was awarded to the defendants, under the act for the relief of occupying claimants. 1 S. & C. 881. The first question arising, involves the validity of the action of the court in holding the defendants entitled to relief under that act. In our judgment the case was not 'one falling within the operation of its provisions. The act operates only upon the class or classes of titles enumerated in the first section. The claimant must be in quiet possession, and must show a plain and connected title in law or equity, derived from the records of some public office; or, being in quiet possession, must hold the land by deed, devise, descent, contract, bond or agreement, from and under some person claiming title in law or equity, derived from the records of some public office, or by deed duly authenticated; or must have acquired the same by sale on an execution against a pei-son having like title, or at a sale for taxes, or by an executor, administrator, or guardian, or an officer of court. § 1. The statute only applies to cases where the claimant» is occupying in good faith, under a title of a kind or character here mentioned, and is evicted by one who sets up and establishes a title both paramount and adverse. The title of the trustee in the present case was in no sense adverse to that of Mrs. Gallup, under which the defendants entered into possession. The interest of both was created at the same time and by the same instrument. The former held the legal title in trust, and was required so to hold it, until a particular event supervened, and then to convey the-' same to Mrs. Gallup, if living; and, if dead, to her child ren.
The legal estate of the trustee, and the equitable estate of Mi’s. Gallup, together with the contingent estate of her children, were parts of the same whole, and together made *27 up the entire interest in the property. The defendants were in possession under Mrs. Gallup, and their title, if any they had, was no more adverse to that held by the trustee than her’s was.
The will required the trustee either to occupy the premises or to lease them; but he seems to have permitted Mrs. Gallup to exercise entire control over them, who, with his acquiescence and apparent consent, placed the defendants in possession. This possession was, therefore, under his title, and hence the right of the defendants, upon eviction, to compensation for permanent improvements upon the land, must be determined by the contract under which they entered. When the occupant goes into possession under the plaintiff’s title and makes improvements, the act for the relief of occupying claimants has no application.
If a vendee of land loses it for want of compliance with the terms of his purchase, and the circumstances are such as to lead a court of equity to refuse relief for improvements made, he is without remedy. The present case falls within the control of this principle. The application, therefore, for relief under the statute should have been denied.
The question next arising is, Were the defendants entitled in equity to a conveyance of the legal title, and if not, were they entitled to remuneration for improvements of a permanent character made upon the premises, in view of the facts stated in the cross-petition ? That they were not entitled to a conveyance of the premises by the trustee is perfectly obvious. The trust created by the will was en-grafted upon the legal title, and it was the duty of the trustee to retain the title until the contingency happened, upon which he was directed to convey to the cestui que trust. We need not therefore stop to inquire how far the coverture of Mrs. Gallup affected her capacity to execute, specifically, the contract to convey: or whether or not a court of equity would have compelled the conveyance. No conveyance she could have made, her husband uniting, would have carried the legal title to the grantee; and a *28 conveyance to the defendants by the trustee would have been a breach of his duty.
The right, however, of the defendants to remuneration for improvements which added an increased value to the land, involves other considerations. It is a rule of the common law, but subject to certain exceptions, that all erections or improvements made upon real estate become a part of the freehold, and the property of its owner. Among the exceptions to the rule, are those that arise at law, under the act for the relief of occupying claimants, and under the act creating liens in favor of mechanics in certain cases; and in equity, in particular cases, -where the provisions of the statute do not apply. It also seems to be settled, that a bona fide occupant, sued by the owner of the premises for rents and profits, may, at law, recoup the value of the meliorations by him made while in the occupancy of the premises. Coulter’s case, 5 Coke, 80; Green v. Biddle, 8 Wheat. 1-82.
That this case is one, which, from its special circumstances, entitles the defendants to remuneration for improvements made upon the land, to the extent that they permanently increase its value, we entertain no doubt. It is a familiar rule, which a court of equity always enforces, that if an owner of an estate stands by and suffers another, acting in good faith and without notice of his title, to place improvements thereon, which add permanent value to the estate, such improvements will constitute a lien thereon. 2 Story’s Eq. Jur. § 1237.
The doctrine proceeds upon the principle, that one person will not be permitted, in equity, to enrich himself by the loss or at the expense of another, when the loss would have been avoided had the former acted honestly and in good faith. His silence, in such case, is tantamount to a fraudulent concealment of his title, and to the extent that the party in possession has been thereby misled into the making of improvements that he otherwise would not have made, a court of equity grants relief by charging the value of the improvements as a lien upon the estate to *29 which they have been added. Bright v. Boyd, 1 Story, 478; Id. 2 Story, 605 ; Shine v. Gough, 1 B. & Peatt. 444; Cawdor v. Lewis, 1 Young & C. 427.
The equity is equally as strong where the improvements are added by one in possession, under an agreement to purchase, made with the equitable owner, to the knowledge and with the acquiescence of the trustee-of the legal title, and in the belief, which such purchaser is justified in entertaining, that the legal title will ultimately be conveyed to him. To permit the owner, in such case, to enjoy the improvements without making compensation therefor, would be quite as unjust as to permit one standing by and concealing his title to enjoy improvements made by another in the belief that the latter was improving his own land. The case of King’s heirs v. Thompson, 9 Pet. 204, is not materially different, in principle, from the present case, unless in the circumstance that there both parties to the contract under which possession was taken and improvements made, were sui juris. Thompson married the daughter of King, who, owning a large estate, offered to give Thompson a house and lot, if he would repair the premises so as to make them a comfortable residence; King saying he intended the property for his daughter, the wife of Thompson. Thompson accepted the offer, went into possession, and expended in repairs and improvements, four thousand dollars. Eour years after, Thompson demanded a conveyance from King, who refused, but offered to vest the title in trust for Thompson’s wife. Propositions looking to the adjustment of the matter were made, and it seems, accepted, but never carried into effect. King dying insolvent, his creditors filed a bill to subject the premises in the occupancy of Thompson to the payment of their claims against King’s estate, and the same were sold by a trustee appointed by the court. Thompson and wife filed a bill to avoid the sale, and for a specific performance against the heirs of King and the trustees of his creditors. Specific performance was denied; but the bill containing a prayer for alternative relief, the court held, that although there was not *30 sufficient evidence to authorize a decree for title, still Thompson had, by the rules of a court of equity, a first lien for the money expended in improvements. In disposing of the question, Mr. Justice McLean said: “ If the terms of the contract were established, so that this court could decree a specific execution of it, they would pronounce such decree. But as specific performance can not be decreed, the inquiry remains, whether the complainant has a lien on the property for the money he expended in improving it? . . . This claim for improvementsby the complainant is founded upon the most equitable considerations. At the instance of George King, his father-in-law, the complainant entered into possession of this property; and under a full belief that it would be secured to him as his own, he was iriduced to expend a large sum of money in making permanent and valuable improvements. . . . And the question arises, whether this expenditure, under the circumstances of this case, does not create a lien upon the property ?” He proceeded to declare that if King wore living, he could not object to the lien, and it being very obvious that his creditors had no better or higher right than he possessed at his decease, a decree was entered directing a sale of the property, and an application of the proceeds to the payment of the plaintiff’s claim for improvements.
In Bright v. Boyd, supra, the plaintiff in possession traced his title, through intermediate conveyances, to a sale by the administrator with the will annexed of John P. Boyd, under whose will the defendant claimed title as devisee, and in virtue of which had recovered the premises in an action at law. It appeared that the administrator was duly licensed to make the sale, and had complied with all the requisites of law necessary to its validity, except that, previous to the sale, no bond, to the approval of the probate judge, had been given for the faithful discharge of his duties. In the action at law brought by the defendant to recover the premises, the court held, that the giving of the bond was an essential prerequisite to the validity of the sale; and not having 'been given, that the sale was void, *31 and consequently that no title passed to the purchaser. The plaintiff had built a dwelling-house upon the premises, and made other improvements of a permanent character, for which, by his bill, he prayed compensation in equity. Mr. Justice Story, in a very able and elaborate opinion, held that he was entitled to such compensation, and that the value of the improvements was a lien upon the premises. On coming in of the master’s report, he said: “ I wish to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that, so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge before he is to be restored to his original rights in the land. This is the clear result of the Roman law; and it has the most persuasive equity, and, I may add, common sense and common justice, for its foundation.” 2 Story, 607. It will be observed, that Bright held neither the legal nor equitable title ; but being a purchaser for value, from one having apparent title, without notice of any infirmity therein, and having made the improvements upon the faith of his ownership, he was held entitled, in equity, to compensation therefor, to be charged upon the land.
From the facts in the present case, it appears that the will of David M. Benedict constituted the provisions made for Mrs. Gallup her separate estate, to be enjoyed by her independently of all control of her husband. The rents and profits were to be paid over to her from time to time during coverture, and in case she survived, or was divorced from, her husband, she became at once entitled to a conveyance of the estate by the trustee. If she died the wife of Gallup the estate was to be conveyed to her children surviving, and to the legal representatives of such of them as were then deceased. At the date of the contract between *32 Mrs. Gallup and the defendant Henry Brown, Kit-tridge held the legal title subject to the trust.
In 1848, Brown assumed such duties of the trust as were capable of being performed without the legal title, and in 1851, made the agreement with Mrs. Gallup set out in the cross-petition, for the part of the premises therein described, and upon which the improvements in controversy were made. Subsequently, in consideration of advancements made to the children of Mrs. Gallup other than Mrs. Brown, they, with the exception of Carrol, released to Mrs. Brown all their-interest in the fifty acres. These fifty acres Mrs. Gallup designed as an advancement to Mrs. Brown. To all this Eittridge, who still held the legal title, was undoubtedly cognizant. These circumstances, in view of the intimate relations of the parties, and the confidence placed in one another, give rise, iu our judgment, to a clear equity in favor of the defendants to the value of such improvements as added a permanent value to the premises, to be charged as a lien thereon. That Mrs. Gallup was a married woman when the agreement with Brown was made, and during the period of time in which the improvements were added, does not affect Brown’s right to compensation therefor. No contract is being enforced against her. Awarding the defendants compensation for improvements' made is only allowing them to take out of the premises the value they put into them, in the full belief that the premises were to become theirs. They take nothing except what in equity and good conscience they are entitled to. The disabilities of coverture are designed to protect a married woman against improvident bargains, and to shield her from improper influences ; but they can not be made the means of enabling her to perpetrate a fraud upon others by seizing and converting to her own use, without compensation, the product of their means and labor.
The objection, that the failure of the defendants to apply to this court for a reversal of the order of the district court sustaining the demurrer to the cross-petition within three years from the time the order was made, is fatal to their right *33 in equity to the relief sought, is not well taken. It appears, from the record that the common pleas sustained the demurrer, to the cross-petition, and ordered its dismissal. From the-judgment of dismissal, the defendants, before the trial of the issue at law, appealed to the district court, where the-demurrer was also sustained, but without a final judgment the cause appealed was remanded to the court of common pleas for further proceedings. Further proceedings were not had in the common pleas on the cross-petition until after the trial of the issue to the jury, arising under the defendant’s denial of the plaintiff’s title, when, evidently, the facts stated therein were made the grounds for grantingrelief under the occupying claimant law. The ruling of the distinct court was right. The ground of the demurrer was that the cross-petition did not state facts sufficient to constitute a defense to the plaintiff’s action. Being interposed to test that question it was properly sustained. If the. matter stated in the cross-petition constituted a defense to the action, it could have been given under the denial of the plaintiff’s title. Kyser v. Cannon, 29 Ohio St. 359. But it did not. It established no right to the legal title,, nor to the possession as against the plaintiff.
The facts stated were available only for the purpose of enabling the court to take proper action to secure to the defendants the value of their permanent accessions to the freehold, in the event the issue at law should be decided against them. Until that issue was determined it could not be ascertained whether or not any relief of that character would-be required. It was only in case the plaintiff obtained a verdict, that the facts stated in the cross-petition would be of any avail to the defendants.
That they were not available for the purpose of giving compensation for the improvements was not determined by the demurrer, nor was such the legal effect of the decision upon it. The only effect of the order was to adjudge the facts insufficient to constitute a defense to the action. It is, moreover, very doubtful whether the proceedings in error *34 would have been barred, even had the district court dismissed the cross-petition, and were the judgment held to be final.
Married women are expressly exempted from the operation of the statute, and remain so during coverture. Code, § 528. If the right to the value of the improvements was the joint and indivisible right of Brown and wife, as alleged, the saving of the statute to Mrs. Brown would inure to the benefit of Brown, and defeat the limitation as to him. Sturges v. Longworth, 1 Ohio St. 545.
Upon sustaining the demurrer to the cross-petition the cause was sent down for further proceedings. What they were to be, or whether any would be required upon the facts stated in the cross-petition, could not be determined until the trial of the issue at law. If the plaintiffs obtained a verdict the court should have withheld judgment, or, if inadvertently given, should have enjoined its execution, until an account was taken of the value of the lasting and valuable improvements, together with taxes paid by the defendants, which, less the fair value of the use of the premises without the improvements, should have been charged as a lien thereon, and possession withheld from the plaintiffs until the account was paid.
What interest in the premises, if any, could have been sold, during the existence of the trust created by the will, we do not determine, as the point is no longer of practical importance. The trust having ended, by a conveyance of the title to Mrs. Callup, in pursuance of the direction contained in the will, upon the further hearing of the case, the premises will be liable to sale, to pay for the improvements, in the same manner as if charged with a mortgage lien.
Judgment, under the statute, for the relief of occupying claimants reversed, and cause remanded for further proceedings.