Tunison *v.* Bradford.

---

## EDWARD TUNISON

### *v.*

## NATHANIEL G. BRADFORD et al.

1. An instrument defective as a deed will be enforced as a contract only in cases in which a valuable consideration has passed between the parties.

2. The ground on which equity interferes in favor of a person who has gone into possession of real estate under a voluntary written contract or parol promise, and has made improvements, is to prevent a fraud being practiced upon him.

3. The expenditure of money to make such a promise enforceable must be made by the promisor, on the faith of the promise, with the knowledge of the promisor.

4. The doctrine will not be applied in favor of one who has improved property with notice of a defect in his title, nor against his tenant in common, when partition can be made which will give him his share with his improvements on it.

On bill, answer and proofs in open court.

*Mr. Howard W. Hayes,* for the complainant.

*Mr. R. Wayne Parker,* for the defendants.

GREEN, V. C.

The property involved in this action was conveyed January 20th, 1874, by its then owner, Augustus E. Watson, to one Rachel L. Bradford, an unmarried lady, who, by deed dated December 30th, 1874, conveyed it to her mother, Rachel Bradford. Rachel Bradford, during the lifetime of her husband, Nathaniel G. Bradford, without her husband joining, executed a deed of the premises, with full covenants of warranty, to her son Benjamin W. Bradford for the consideration expressed of $1. The execution of this paper by Mrs. Bradford was acknowledged before a New York officer, whose certificate of acknowledgment states that the grantor is the wife of Nathaniel G. Bradford, and recites that she, on a private examination separate and apart from her husband, made the acknowledgment which is required by the statute of this state in the case of conveyance by married women.

This deed was recorded in Essex county, but not until October 2d, 1882.

Mrs. Rachel Bradford died April 1st, 1882, leaving her surviving her husband, Nathaniel G. Bradford, and two sons, Benjamin W. Bradford and Nathaniel G. Bradford, Jr.

Nathaniel G. Bradford, the father, under date of September 15th, 1882, executed a deed of release to the premises to his son Benjamin W. Bradford. The father died May 1st, 1883. Benjamin W. Bradford and wife, by deed dated May 22d, 1883, conveyed a part of these premises to one Anthony J. Sigler, and, by deed dated September 27th, 1883, conveyed the balance of the property to the same person.

Anthony J. Sigler, by deed dated October 1st, 1886, conveyed the premises to the complainant.

On the 22d of May, 1889, Nathaniel G. Bradford, Jr., commenced an action in ejectment in the supreme court of this state to recover the possession of an undivided one-half interest in said premises. The further prosecution of this suit is sought to be restrained by this action, and that Nathaniel G. Bradford, Jr., may be decreed to hold an undivided half interest in said land in trust for complainant, or that complainant is entitled to a

specific performance of a parol agreement between Rachel Brad-
ford and Benjamin W. Bradford, or the agreement which com-
plainant charges was contained in the deed from Rachel Bradford
to Benjamin W. Bradford.

This property is situated on the northwest corner of Lincoln
avenue and May street, in the city of Newark, and is one hun-
dred and twenty-five feet on Lincoln avenue and two hundred
and eighty feet on May street. There was an old house on the
property which the complainant moved from its former location
to the back part of the lot, where it has been placed fronting on
May street; the barn is on the northwest corner of the lot, and
defendant has erected a dwelling-house, at a cost of some $10,000,
on the northerly side of the property, the line of the house being
some fifteen feet from the north line of the lot. The premises
have been graded and sodded, except so much as is occupied by
the house, barn and a garden, twenty-five by fifty feet.

The bill alleges that the original grantor, Augustus E. Wat-
son, was indebted to Benjamin W. Bradford in a very large sum
for money loaned by Bradford to him, and that the conveyance
by Watson of the property was in part payment of his indebted-
ness to Benjamin W. Bradford, but that the latter being at the
time engaged in speculation in the stock market, and wanting to
put the property where it would be safe against possible future
loss, had the conveyance made by Watson to his unmarried sister,
Rachel L., instead of to himself, the property at the time being
encumbered by mortgages to the amount of $5,100, alleged to be
its full value; that Rachel L., being in delicate health, at the
request of her brother Benjamin, conveyed the premises to their
mother, Rachel; that no consideration was paid or received for
that conveyance; that the mother knew that the premises were
held in trust by her daughter for the son, and received the title
subject to the same trusts, and agreed with her son to hold it in
trust for him. He claims that there was a resulting trust in
favor of Benjamin, as the consideration for the conveyance from
Watson proceeded entirely from Benjamin, and that the convey-
ance from the daughter to the mother was without consideration.

Tunison v. Bradford.

.and with full knowledge of the trust. This branch of the case may as well be disposed of at once.

Benjamin W. Bradford has been examined as a witness on commission and fails entirely to substantiate the contention on which a resulting trust is sought to be raised in his behalf; there is no proof whatever that the consideration of the convey-ance from Watson to Rachel L. Bradford was paid by or ema-nated in any way from Benjamin W. Bradford, and the title must be considered as having been vested absolutely in fee in the mother, Rachel Bradford, by the conveyance to her. The only question which, therefore, presents itself is, what effect, if any, is to be given to the attempted conveyance by Mrs. Bradford to her son Benjamin W. Bradford by the paper dated December 30th, 1881? It was a voluntary conveyance for a nominal considera-tion of $1, made by a married woman during the lifetime of her husband, which fact is made apparent to all by the recital of the officer taking the acknowledgment, and of which notice was given by the record.

Chancellor Runyon, in the case of the *Union Brick and Tile Manufacturing Co.* v. *Lorillard, 17 Stew. Eq. 1; affirmed, 18 Stew. Eq. 289,* considers the changes made by the Married Women's acts on the power of the married woman to make a contract for the sale of her real estate, and holds that under the law as it now stands a married woman may make a valid con-tract for the sale of her real estate, which contract can be -enforced against her after the death of her husband. In the court of appeals, the decree in the case was affirmed without passing upon the first branch of the decision, but putting it on the ground that the married woman, Mrs. Van Buskirk, had, .after the death of her husband, so recognized her former con-tract as to make it practically a new one. The chancellor, how-ever, in the case, calls attention to the fact that, by the fourteenth section of the act, it is expressly provided—

"that nothing in this act contained shall enable any married woman to exe-cute any conveyance of her real estate, or any instrument encumbering the -same, without her husband joining therein as heretofore, excepting those instances in which express provision is herein made."

Tunison *v.* Bradford.

Those instances being cases where the husband is of unsound mind, is in prison or living in a state of separation &c.

There is nothing, therefore, in the Married Women's acts in this state which would validate this conveyance made by Mrs. Rachel Bradford to her son, during the lifetime of her husband, without her husband joining in the same.

It is, however, urged that, while the instrument may be inoperative as a deed, it may yet be taken as a contract by Mrs. Rachel Bradford to convey the premises therein described to her son Benjamin.

Counsel quotes extracts from *Wilson* v. *Keating, 27 Beav. 121, 125,* and *Patterson's Lessee* v. *Pease, 5 Ohio 190, 191,* that equity will treat a paper defective as a deed for the conveyance of real estate as a contract to convey and enforce the same. While neither case cited, on examination, appears to have involved the question, authority is not wanting to support the position if a substantial and valuable consideration has passed between the parties. But in this case no consideration whatever, so far as the evidence goes, and so far as can be gathered from the instrument itself, passed either from Benjamin or to his mother, Rachel; the conveyance, if it be treated as a·contract to convey, was entirely voluntary, and invokes the application of the rule that equity will not interfere to enforce a contract which does not rest upon a good and valuable consideration.

But it is said that if the beneficiary under a voluntary agreement in writing takes possession and makes valuable improvements, he will be entitled in equity to a decree for a specific performance.

There is no different rule, outside of the statute of frauds, to be applied to a voluntary written agreement to convey and a parol gift, and complainant's contention on each ground can be considered together. The cases referred to by him are mostly those where the promise to convey has been made contingent on the other party doing certain specified things which he has performed. Such was the fact in *France* v. *France, 4 Halst. Ch. 650,* and in *King* v. *Thompson, 9 Pet. 204.* In *Freeman* v. *Freeman, 43 N. Y. 34,* the facts were that a father had put his son in pos-

session of certain real estate, saying he had bought the place for him and his wife as long as they lived, and that he gave it to them ; the son cleared part of the land, fenced it, built substantial improvements and paid the taxes, and then the father brought ejectment.

Judge Grover states the question before the court thus : " Whether a parol promise by one owning lands to give the same to another will be enforced in equity, when the promisee has been induced by the promise to go into possession, and with the knowledge of the promisor, make comparatively large expendi-. tures in permanent improvements on the land." He likens it to a promise by parol to sell with expenditures afterwards, and says : " The ground upon which this equitable jurisdiction is exercised, although sometimes said to be part performance, really is to prevent a fraud being practiced upon the parol purchaser by the seller, by inducing him to expend his money upon improvements upon the faith of his contract, and then deprive him of the benefit of the expenditure and secure it to the seller by permitting the latter to avoid the performance of his contract." This statement of the principle makes it apparent that expenditure of money, to make a promise enforceable, must be made by the promisee, on the faith of the promise, with the knowledge of the promisor. These elements are all wanting. Mrs. Bradford, the donor, died in 1882. There is no evidence that Benjamin W. Bradford expended any money whatever in valuable improvements, or in clearing the property of its encumbrances, or did anything to put himself in a position to claim the application of· this principle. The subsequent expenditures made by Sigler and the complainant cannot be invoked for the application of the principle, for neither stood in the position of a promisee or made the expenditure on the faith of a contract or promise of Mrs. Bradford to convey. They were acting on the faith of the conveyances from Benjamin W. Bradford to Sigler. Their expenditures were also made with notice of his title furnished by the records, which gave them legal notice that his only title was to one undivided half as heir-at-law of his mother. Besides this, the defendant was not in a position to object, as those making the

expenditures were the tenants in common with him, and had the right to improve their own. There is nothing in the case to raise the imputation of fraud which is at the foundation of the principle. Neither will the doctrine be applied in a case where the party, who has made the expenditures, can be made whole with reference to the improvements so made, by a decision which does not uphold the invalid transaction. As in this case, Mrs. Rachel Bradford having died seized of this property, the same, after the death of her husband, descended in equal parts to her two sons, Benjamin W. and Nathaniel G. The complainant holds by his conveyances all the title of Benjamin W. to his undivided one-half. The improvements made by the complainant are such, and are so placed upon the property, that, in a partition of the property, the one-half containing all the improvements, except grading and sodding, made by the complainant can be set off as his part of the property.

It is claimed that this case is within the principle of *Phelps* v. *Morrison, 9 C. E. Gr. 195, 10 C. E. Gr. 538.* In that case property belonging to one Morrison was conveyed by him, in fraud of his creditors, through a third party to his wife. The wife, without her husband joining, made a deed of the property, for the consideration of $6,500, to one Allendorph, who purchased in good faith and paid the consideration money and got his conveyance.

Phelps was a creditor of Morrison at the time of his voluntary transfer of the title to his wife, and one of the questions considered by the chief-justice in the court of appeals was, whether what was called the equitable title, residing in Allendorph, was exempt from the provisions of the statute for the prevention of frauds, under which the voluntary conveyance of property by a debtor was null and void as against existing creditors, by virtue of the sixth section in favor of *bona fide* purchasers. In the consideration of that question it is held that Allendorph, although the conveyance executed by the wife was not signed by the husband, was vested with an equitable title to the fee; but the equitable title in that case, and all cases similar to it, springs from a good and valuable consideration *bona fide*

paid, and not from an invalid conveyance; while in the case in hand we are confronted with the fact that there was no consideration whatever for the conveyance to Benjamin from his mother.

This case seems to me to present simply the condition of a grantee who has taken a defective title. The conveyance from Mrs. Bradford to her son Benjamin was drawn by a New York lawyer, who acted under the impression that the law in New Jersey was similar to that of New York, which permitted a married woman to make a conveyance of her real estate held by her in her own right, without her husband joining with her in the deed. The fact that the husband was living at the time of the conveyance was clearly shown by the record, and I cannot conceive of any case where the court would not be justified in interfering to perfect an invalid title, if it should in this.

The complainant and Nathaniel G. Bradford, the plaintiff in ejectment, are each owners of an undivided half of this property. Partition can be equitably made so that the complainant shall have the benefit of the improvements which he has made and put upon the property, and the court will not be justified, under all the circumstances, in further interfering with the plaintiff in the ejectment suit from the prosecution of his remedy, and I therefore advise that the bill be dismissed, with costs.