Mr Justice M’Lean
 

 delivered the opinion of the Court..
 

 This is an appeal from the decree of the circuit court for the District,, of Columbia.
 

 The defendants here, who were trie complainants m the circuit court, filed their bill, stating that-in the year 1812, they were married; and that the wife of the complainant is the daughter of George King, who at that time lived in. George-, -town,, and was extensively engaged in a profitable mercantile business. That his credit wag high, and complainants believe he was possessed of a large active capital; and in addition had. a large real estate, consisting of houses and lots in Georgetown. That it was' universally believed he would have a large surplus property after paying his debts, which would enable him to provide handsomely for his children.
 

 . That a few days after the riiarriage, George King proposed to grant to the complainant, Thompson,.a house and lot on Cecil alley, in Georgetown, which was very much out of repair and almost untenantable, provided he would repair the same so as to make it a comfortable residence; and that the said King at the same time stated, he intended the property for the wife of the complainant.
 

 . The complainant accepted tire property, and expended upwards of 4000 dollars in making repairs of the house and other
 
 *216
 
 improvements on the lot. That he occupied it as a residence about four years, and then removed to tlife western country. Before his removal, a correspondence took place between him and the said King in relation to the title; and the complainant made King his agent to collect the rents, &c.
 

 The complainant further states that the said King died intestate ; leaving, in addition to the, wife of the complainant, certain children who are made
 
 defendants;
 
 and a decree for a legal title is prayed, or if that cannot be decreed, that the property may stand charged to the amount of the repairs and improvements.
 

 George King died in the year 1820, insolvent. His debts amounted to 36,000 dollars, and his whole estate, both real and personal, when sold, did not pay more than thirty-nine per cent of his just debts. The property claimed by the complainant was sold for 1660 dollars, by a trustee, under.a decree of chancery, obtained by the creditors of George King, but the sale has not been ratified.
 

 Raphael Semines, the trastee of George King’s creditors, and Charles King, one of the. principal creditors, filed'their answers to the bill of the complainant, in which they-deny that the improvements were made on the property as set forth in the bill, and insist that George King, at the time of the intended gift, was embarrassed and unable to pay his debts; and they insist that the right set up by the complainants is fraudulent and void as against creditors.
 

 There are some irregularities in the record which it is not material
 
 to
 
 notice, as these statements show the points to which the evidence applies.
 

 The first inquiry is, whether a contract was made between the complainant and George King for the property in question.
 

 It is insisted, by the complainant’s counsel, that the correspondence between .the .parties, which is contained in the record, establishes the contract.
 

 The first is a letter from George King to the complainant, dated 17th April 1816. In this letter King says, “that in order to remove any suspense in regard to the property on which the complainant then lived, that he held himself bound to give a deed to a trustee, who shall hold it in trust for the complainant and his wife during their lives,” &c.
 

 
 *217
 
 This letter is answered by the complainant, 26th April 1816, . in. which he declines the terms proposed, and suggests the following.
 

 1. Let the property be valued at the time, it was put into his possession, -and that he would pay the amount over to King, &c.
 

 2-
 
 That the improvements should be estimated, and King, on paying the amount, should receive a relinquishment of all the right of the complainant.
 

 ' 3, That a deed should be executed for the property to the wife of the complainant..
 

 On the 29th of April 1816, King replies, “ I make no’hesitation in complying with your first proposal, for it is just what I proposed in my first to you, and I will do it another way, giving you your choice: viz. I will deed the dwelling house and'all above it to you, and about twenty feet below it; and then all below that, I will deed to Betsey,” the wife of the complainant, “ provided she will never deed it, or dispose of it, except by will, which she shall always be at liberty to make, when and how she pleases.”
 

 On the 14th of August 1819,. King writes tcf the complainant, “ Mr Kennedy has left your house since the first of July last, and I have not been able to get a tenant since. Houses are very dull here now; rents have fallen very much,” &c.
 

 And on the 23d of March 1831, George King, son it is presumed of George King deceased, writes to complainant,
 
 “
 
 I am sorry to inform you that Mr Jacob Payne has laid an attachment on your property in Georgetown, &c.,” referring to the property in controversy.
 

 This is all the evidéhce to show a contract, except what might be presumed from the occupancy and improvement of the house and iot.
 

 Specific propositions were made by each party, jn regard to the title of the property, but It does not satisfactorily appear that either was finally accepted. The complainant in the first place objects to the conveyance of the property to a trustee, for the benefit of his wife; and he proposes to pay to King the value of the property at the time it was put into his possession, which sum, at the pleasure of the donor might be vested for the benefit of complainant’s wife. To this King replies that he
 
 *218
 
 has' nó hesitation in accepting the proposal,-but he accompanies this acceptance with a proposition to deed the 'dwelling .house, with a certain part of the lot, to the complainant, and the residue'of the lot to'his Wife.'
 

 Whether this last proposition, or the one made by the complainant, and assented to by King, formed the contract; is uncertain;' or indeed whether any definite agreement was'finally, made
 

 From the occupancy of the property, and the amount of money"expended in improving it, there can be no doubt, that there was an understanding between the parties, that the property, in some manner; should be.possessed and owned by the complainant:' The evidencé,'however, shows that King did not intend to vest the property^absolutely in the complainant; but that the value of it, befo:e the improvenients, should in some form, be secured to the complainant’s wife.
 

 This court are now called on to'decree a.specific execution of this contract; and what are its terms ? Shall the title be vested in fee in the complainant, without condition; or shall a part of the property be vested in trust for the benefit of his wife
 
 'l
 
 Or shall the title be vested in the complainant, on his paying into the hands of trustees, for the benefit of his wife, the value of the property when he first received it
 
 %
 

 '
 
 The evidence does not afford a satisfactory answer to any one Of these inquiries. It' is impossible, therefore, for the court to decree a title as prayed-for in the bill, .as the evidence fails to establish the specific terms of the contract.
 

 But it is insisted, that this arrangement or contract, if proved, was void as against the heirs of King, and especially as against his creditors; on account of the indebtment of King at the'time and his subsequent insolvency.
 

 Although a contract is not proved -with sufficient certainty, as to its conditions, to authorize a specific execution of it, yet there can be ho doubt, there was an agreement between the parties, which induced-'the-complainant to enter into the possession of the property, and to expend large .sums of money upon it, as if it were his own ; and when he left it and removed to the western country, it was. rented as his property, and George King acted as the agent of the' complainant. And
 
 *219
 
 the-property seems to have Been considered, as belonging to the complainant, by the heirs of George King.
 

 Whatever uncertainty may exist, as .to the terms of thecon-tract, there can be no question that-the complainant. acted under it, in taking possession of the property and expending a large sum of money in its improvement. -
 

 ' --In-no point-Of view could such a contract be considered voluntary. There was not only-a good consideration, that of natural affection ; but a valuable one. To constitute a valuable consideration, it is not 'necessary that money should be paid: but if, as in this case, it be expended on the property, on * .he faith of the Contract, it constitutes a valuable consideration.
 

 ! The debts of George King for the years 1812,1813 and 1814, amounted to "about 13,000 or 14,000 dollars, of which 11,000 dollars were dtie to the Bankof‘Columbia. And the average amount of his debts, from 1812 until his death, was about the sum of 13,000 dollars.
 

 In 1812, and for some years afterwards,' George King was supposed to be rich. For his house oh High street he refused 12,800 dollars. . The whole amount of his property was estimated at 60,000 dollars or .more. He was indorser on accommodation notes for about 20,000 dollars, at the above period.
 

 At this time the property claimed by the complainant was not worth njore than 2000 or 2500 dollars. Its value was increased three or four times this sum by the improvements..
 

 ■ In 1827 .it appears, by an exhibit of the debts due by the estate of George King,, including interest, that they amounted to thé&um of 36,418 dollars and 10 cents. But many of these debts seem to-have- been contracted subsequent to the time that the property in question was placed in the possession of the complainant. It appears also, the property of which King 1 died possessed, did not pay forty per cent of the debts due by the estate. And that he retained the greater part, if not the whole of his real, estate, except' the lot claimed by the complainant, until his decease. But it seems from the prices fixed upon this property in 1813, and those forwhich it was sold, that there must have been a great deterioration in the value of it.
 

 Under the above circumstances, it is insisted by the appellants, that the contract with the complainant, by George King, for the above property, was fraudulent..
 

 
 *220
 
 It has already been observed, that the money expended in the improvement of this property, constituted a valuable consideration. The contract,; therefore, if proved, so as to entitle the complainant to a decree for a specific execution, could not be avoided, on the ground that there was no consideration.
 

 At the time this property was received by the complainant, King was supposed to be rich. His property was estimated at 60,000 dollars ; his debts did not exceed 13 or 14,000 dollars, . and his, indorsements were about 20,000 dollars-. That his credit stood high is shown by his indorsements, and the standing accommodation given to him in the banks. So high did he stand as a man of property and business, that it was deemed a valuable object to obtain his services as director in one of the Georgetown banks. There seems to have been no diminution of his credit or means for several years after the transaction with the complainant.
 

 In testing the validity of that.transaction, the subsequent fall of property or failure of King, cannot be taken into view. The inquiry must be limited to his circumstances at the time. Was King, when this property was received by the complainant, in a failing or embarrassed condition 1
 

 It is not shown, that at this time, the persons for whom he was bound as indorser, were unable to pay the respective sums for which he was responsible-; and it would be improper to consider these sums as debts due by King. He was responsible fo'r their payment, on certain contingencies; but the fact that his credit remained unimpaired for several years after the contract with the complainant; shows that neither his credit nor the credit of those for whom he was indorser, was considered doubtful.
 

 In this state of facts, he surely was in a condition to dispose of a house and lot; not worth more than 2500 dollars, on the terms stated in the bill.
 

 There appears to have been no fraudulent intent in the case ; no disposition to defeat the claims of present creditors, or to cover the property from future demands. It seenis to have been a bona fide transaction ; and one, which neither a court of law nor of equity could refuse to sanction. And if the terms of the contract were established, so that this court could decree a specific execution of it, they would pronounce such a decree.
 
 *221
 
 But as .a specific performance cannot be decreed, the inquiry remains, whether the complainant has a lien on the property for the money he expended in improving it.
 

 The counsel for the appellant do not controvert the right of the complainant to a just remuneration for the valuable improvements he made; but they insist that he must exhibit his claim as a general creditor of the estate of George King; and that from such claim there should be deducted a, reasonable rent for the time the property was in his possession.
 

 This claim for improvements by the complainant, is founded upon the most equitable considerations. At the instance of George.King, his father-in-law, the complainant entered into the possession of this property; and under a full belief that it would be secured to him as his own, he was induced to expend a large sum of money in making permanent and valuable improvements. These improvements, some of the witnesses say, have increased the value of this property to three times the amount which it was worth before they wefe made. From this, it appears, the money was not injudiciously expended; and the question arises whether this expenditure^ under the circumstances of this case, does not create a lien upon the property.
 

 If King were living, he could not object to this lien. Can his creditors object to it1? ' By enforcing if, can their interests be injuriously affected ?
 

 It may be said that the deterioration of property in Georgetown, has been such as to reduce the value of this property tó a less sum than was expended in making the improvements. This cannot change the principle that must govern the case. If the money has been judiciously expended, under such circumstances as to entitle the complainant to a lien, the court must give effect to it. It is an equitable mortgage, .and in a court of chancery, is as binding on the parties as if a mortgage in form had been duly executed.
 

 Suppose George King, for the purpose of improving this pro- ' petty, had borrowed from the complainant 4000 dollars, and had executed a mortgage on the same property, to secure the payment of the money. Could the creditors of King complain of the lien of the mortgage ? It is clear they co.uld not. And is it not equally clear, that they have no ground to complain
 
 *222
 
 of the equitable mortgage ^ If there be any difference in the force of the liens thus created, it mUst be in' favour of the equitable lien.
 

 In the first case supposed, the money was loaned at a fixed rate of interest, and the property was looked to as securing the payment. But in the second; case, the money was expended under a belief that the property belonged to the individual, and that the amount expended increased so much the value pf his estate: and, in many cases, a failure to obtain the property, under such circumstances, w'oukl cause an injury which a return of the money expended would not repair.
 

 It would be most unjust to leave the complainant, as a ere- - ditor, to receive a dividend on the distribution of the estate of King.
 

 Ought the complainant to be held accountable for rents, while he occupied the premises; or which he may have subsequently received from his tenants
 
 1
 

 The rents received by the complainant after his removal to the. west, independent of other facts in the case, go to show that he was not considered as the tenant of King. Indeed there can be no doubt that the complainant considered the property as his own; and it was so treated by George King, for he collected the rents as the agent of the complainant, and accounted to him for them. It would therefore be unjust now to compel him to pay rents which, with the concurrence of all parties, were paid to him at the time'they accrued, as his own.
 

 And, in addition to this, the interest on the money expended, would, perhaps, be equal to the whole amount of the rents.
 

 As the circuit court decreed a conveyance of this property to the complainant, that decree must be reversed; and. the cause remanded to that court, with instructions to cause the property to be sold, after due notice, oh such terms as they shall deem most advantageous to. the estate of George King: and the proceeds of the sale, first, to be applied to the payment of the money expended by the complainant in making improvements on the property, and the balance, if any, to be paid over for the benefit of the creditors of the estate of King.
 

 This cause came on to be heard on the transcript of the record
 
 *223
 
 from the circuit court of the United States, for the district of Columbia, holden in and for the county of Washington, and wás argued by counsel; on consideration whereof, it is ordered, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby reversed ; and that this cause be and the same is hereby remanded to the said circuit court for further proceedings to be had therein, according to law and justice, and in conformity to the opinion of this court.