WASHINGTON COUNTY FARM BUR. CO-OP. ASSOC., APPELLANT,
v. THE B. & O. R. R. CORP., APPELLEE.

[Cite as Washington County Farm Assoc. v. B. &. O.
(1972), 31 Ohio App. 2d 84.]

(No. 360—Decided August 9, 1972.)

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. Peter J. Gee*, for appellant.
*Mr. Randall Metcalf*, for appellee.

GRAY, J. This cause is in this court on appeal from a decision of the Court of Common Pleas of Washington

County granting a motion of the defendant for a summary judgment.

Plaintiff feeling aggrieved by this result filed its notice of appeal and assigned the following errors:

"*Assignment of Error I.* The Court erred in finding that the statement of the plaintiff-appellant would have the right of first refusal as contained in the letter of May 8th, 1959, required consideration to support it.

"*Assignment of Error II.* The Court erred in granting summary judgment to the defendant-appellee based on the evidence before it, and in the absence of any evidence, by affidavit or otherwise, as required by Ohio Revised Code, Section 2311.041, showing no genuine issue of fact for which trial was required."

It appears that defendant had leased the premises in question to plaintiff for a number of years.

On May 8, 1959, the manager of the real estate department of defendant wrote the following letter:

"This refers to your Association's request that it be given the first refusal to purchase property fronting along the west side of Third Street situate north of Butler Street.

"This will advise that should the Railroad Company relocate its freight facilities from Marietta to West Marietta prior to June 1, 1969 and prior to that date place its property in Marietta on the market for sale, the Railroad Company will give to Washington County Farm Bureau Cooperative Association the first refusal to purchase so much of the premises outlined in green on attached print to which the Railroad Company has fee title. Such purchase shall be upon terms and conditions approved by the President and Directors of The Baltimore and Ohio Railroad Company and conveyance shall be subject to driveways, zoning restrictions, easements and servitudes howsoever created, etc."

On May 26, 1969 the attorney for plaintiff wrote the following letter:

"I represent Washington County Farm Bureau Cooperative Association, Inc., Marietta, Ohio, in connection with the right granted by the B & O Railroad Co. by let-

ter of May 8, 1959 to purchase the property in Marietta on which my client's business is located. On May 29, 1968, Washington County Farm Bureau Cooperative Association, Inc. directed a letter to you in which it was stated, 'The Board of Directors has instructed me to notify you that it wishes to exercise the right granted in your letter of May 8, 1959 and purchase the land for which first refusal was given.' This is to confirm that Washington County Farm Bureau Cooperative Association, Inc. intends to purchase the land covered by the option granted in your letter of May 8, 1959.

"There is now a binding contract for the purchase of the Marietta property, although the price is yet to be determined. Your letter of May 8, 1959 provides that the purchase shall be upon the terms and conditions approved by the President and Directors of the Baltimore and Ohio Railroad. To date there has been no indication of what terms and conditions have or would be approved by the President and Directors.

"My client is prepared to purchase the land but cannot proceed further until you state a price for which you will sell. Negotiations between the Community Improvement Corporation of Marietta and the Railroad had been carried on for some time prior to May 29, 1968. I have not been advised that a price was determined but in any event your price to Washington County Farm Bureau Cooperative Association, Inc. cannot be more than the price at which you were or are willing to sell to the Community Improvement Corporation.

"May I have your acknowledgement of this letter and what you propose by way of completing the sale to my client."

On May 29, 1968 plaintiff wrote the following letter:

"We have learned that the B & O Railroad is considering selling its property at Marietta, Ohio on Third Street to the Marietta Community Improvement Corporation. Since we own buildings and conduct a business on the land which we occupy under a lease from you, we are concerned about the effect on our right to stay here if the land is sold.

"This letter is being written to remind you that by letter of May 8, 1959 you granted us the right of first refusal to the property until June 1, 1969. Copy of the letter is attached. The Board of Directors has instructed me to notify you that it wishes to exercise the right granted in your letter of May 8, 1959 and purchase the land for which first refusal was given. I will appreciate it if you will have your representative contact me so that we can work out the details of the purchase."

Plaintiff alleges defendant fails and refuses to sell and convey the property to plaintiff. It filed a petition on December 17, 1969, praying for specific performance of a contract based upon the lease and the above correspondence. The petition alleges that plaintiff has been in possession of the land as described in the petition from October 7, 1938 and that plaintiff was and is in sole possession at the time the petition was filed and that, in reliance upon the right to purchase and the option to purchase such premises, plaintiff made substantial improvements thereon.

At this juncture, the court wishes to observe that the most that plaintiff had was the right of first refusal. From the record it appears that plaintiff wishes to buy and defendant wishes to sell. Defendant has also moved its freight yard to West Marietta and plaintiff notified defendant prior to June, 1969, that it wished to exercise the right granted in defendant's letter of May 8, 1959.

The trial court favored us with an opinion. Among other findings, the trial court made the following statement:

"This evidence being construed most strongly in favor of the Plaintiff Co-Op against whom the motion is made is considered by the Court to be nothing more than a statement of intent on May 8, 1959, of the Railroad Company. There does not appear to be any consideration whatsoever for this statement and no unilateral amount of effort on the part of the Plaintiff Co-Op to 'pull itself up by its own boot straps' could serve to convert this statement of intent into a binding contract between the parties."

It is apparent that no selling price has been mentioned by plaintiff.

We believe that the trial court committed prejudicial error in granting a summary judgment under these circumstances. In doing so, it ignored the equitable doctrine of estoppel and the effect of action in reliance on a promise. This matter is treated extensively in 1A Corbin, Contracts, Sections 193-209. On pages 246 and 247, the author suggests various tests to apply to the various fact patterns.

"In determining whether action in reliance on a promise, in any particular case, is sufficient to make that promise enforceable, it may be helpful to suggest a number of questions to be answered. First, was the action in reliance actually bargained for by the promisor and given by the promisee in exchange for the promise? If the answer to this is yes, we have a case of true consideration, even as that is narrowly defined by the American Law Institute. But if the answer is no, the following additional questions are suggested:

"1. Was the action of the promisee actually induced, in part or in whole, by the promise?

"2. Was that action or forebearance substantial, constituting a material change of position by the promisee?

"3. Did the promisor desire or request it, even though not offering his promise in exchange for it?

"4. Did the promisor have reason to foresee such action or forebearance as a probable result of his promise?

"5. Was the promised performance costly or difficult?

"6. What ratio does the cost or value of the action in reliance bear to that of the promised performance?

"7. In the light of the answers to the foregoing questions, what remedy, if any, will be just and equitable? Should it be full money Damages, measured by the value of the promised performance and the foreseeable injury resulting from non-performance; or Restitution, measured by the promisor's own unjust enrichment; or Reimbursement of the expenditures and losses incurred by the promisee, or Specific Performance?"

We direct attention, also, to pages 248-250 of 1A Corbin on Contracts to the cases therein cited.

This question was passed upon by the United States Supreme Court in 1835 in *King's Heirs* v. *Thompson*, 34 U. S. 204. The court said that the donee took possession and made improvements costing $4000 on land worth $2500. The court, also, said that the expenditure was a valuable consideration, but refused specific performance because of the indefiniteness of terms. It decreed a lien on the premises for the value of the improvements. In fact, the amount of the lien was in excess of the existing market value of the entire property.

The theory expressed by the United States Supreme Court in *King's Heirs* v. *Thompson, supra,* was followed by the Ohio Supreme Court in *Preston* v. *Brown*, 35 Ohio St. 18, 28, 29.

Our dissenting colleague devotes much of his opinion to the argument that specific performance cannot be granted because no price was fixed by the parties. We concede that plaintiff has not shown a cause of action entitling him to specific performance. We make the point that the trial court committed prejudicial error in granting a motion for a summary judgment on the state of this record. Conceding that specific performance cannot be granted, we then are compelled to decide whether other equitable principles are involved. We believe that plaintiff has the right to present to the trial court for determination the equitable doctrine of estoppel and the effect of action by plaintiff in making improvements on the land in question in reliance on the promise of defendant. Plaintiff was denied the right to present this facet of the case to the trial court and therein lies the prejudicial error in this case. The Supreme Court of Ohio recognized this equitable doctrine and right in *Preston* v. *Brown, supra.* Such right was previously recognized by the Supreme Court of the United States in the *King's Heirs* case, *supra.*

The salutary purpose of Rule 56, of the Rules of Civil Procedure is to permit the speedy and expeditious disposal of cases where the pleadings do not as a matter of fact pre-

sent any substantial question for determination. Flimsy or transparent charges or allegations are insufficient to sustain a justiciable controversy requiring the submission thereof for trial. The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that there are, as a matter of fact no genuine issues for trial. See, also, *Sabin* v. *Home Owners' Loan Corp.* (C. C. A. 10), 151 F. 2d 541; *Brooks* v. *Utah Power & Light Co.* (C. C. A. 10), 151 F. 2d 514. But, it is not the purpose of the rule to deprive litigants of their right to a full hearing on the merits if any real issue of fact is tendered. *Sartor* v. *Arkansas Natural Gas Corp.*, 321 U. S. 620 at page 627. The power to pierce the flimsy and transparent factual veil should be temperately and cautiously used lest abuse reap nullification. See *Doehler Metal Furn. Co.* v. *United States* (C. C. A. 2), 149 F. 2d 130, and cases cited in footnote 6.

Before rendering a summary judgment, the court "must be satisfied not only that there is no issue as to any material fact, *but also that the moving party is entitled to a judgment as a matter of law.*" *Palmer* v. *Chamberlin* (C. C. A. 5), 191 F. 2d 532, 27 A. L. R. 2d 416. The second requisite of Rule 56 (c) of the Federal Rules of Civil Procedure does not automatically follow from the first requisite. *Shahid* v. *Gulf Power Co.* (C. C. A. 5), 291 F. 2d 422.

*Whether the requisites of Rule 56* (federal rule) *are met, "is really to be measured by whether no evidence could be offered to support the plaintiff's theory."* *Demandre* v. *Liberty Mut. Ins. Co.* (C. C. A. 5), 264 F. 2d 70, 72. (Emphasis added.) See, also, Rule 54 C, Rules of Civil Procedure.

While a party may not avoid a summary judgment merely by denying an opponent's allegations (*Erickson* v. *United States* (C. C. A. 5), 340 F. 2d 512), it "should be granted only * * * where it is quite clear what the truth is." *National Screen Service Corp.* v. *Poster Exchange, Inc.* (C. C. A. 5), 305 F. 2d 647, 651. If the court must rely "upon an inquiry into the surrounding facts and circumstan-

ces, the court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the court to be reasonably certain that it is making a correct determination of the question of law.'' *Palmer* v. *Chamberlin* (C. C. A. 5), 191 F. 2d 532, 540, 27 A. L. R. 2d 416. Indeed, summary judgment may be improper even where ''the historic facts'' are free of controversy:

''It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.''

*Keating* v. *Jones Development of Missouri, Inc.* (C. C. A. 5), 398 F. 2d 1011, 1013, citing *American Fid. & Cas. Co.* v. *London & Edinburgh Ins. Co.* (C. C. A. 4), 354 F. 2d 214, 216.

Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. That we now can correct its misguided application here is no answer. This case has been in suspended animation for 2½ years and it tellingly mocks the statement contained in Rule 1(B) of the Rules of Civil Procedure that:

''These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice.''

Applying these rules, we are of the opinion that plaintiff had the right to present to the trial court, on the merits, his rights as enunciated in *Preston* v. *Brown, supra* and *King's Heirs* v. *Thompson, supra.* This right was denied it to its prejudice.

Plaintiff alleges in the fifth paragraph of its petition the following:

''* * * [P]laintiff was and is in sole possession of said land up to the present time; and that in reliance upon right to purchase and option to purchase said premises, plaintiff made substantial improvements thereon.''

The prayer of the petition concludes as follows:

"* * * [and] for such other and further relief as to the court may seem just."

Rule 1B, Rules of Civil Procedure, states:

"(B) Construction. These rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice."

This is fortified by Rule 8F, which states:

"Construction of Pleadings. All pleadings shall be so construed as to do substantial justice."

In turn, the above concept is stressed by the language used in Rule 54C, which, in pertinent part, is as follows:

"* * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled * * *."

The philosophy of the Federal Rules of Civil Procedure, upon which our Rules are based, is contained in the article written by Pike and Willis, the New Federal Deposition—Discovery Procedure, 38 Colum. L. Rev. 1179. That article reads, in pertinent part, as follows:

"The new Federal Rules of Civil Procedure do not proceed upon the assumption that the function of pleading is to prepare the case for trial. It is recognized that the 'issue-pleading' of the common law does not sift out the real issues, the 'fact-pleading' of the codes the real facts. The generality of allegations contemplated by the Rules indicates the influence of the newer concept of 'notice pleading'; the object of the complaint is to indicate to the defendant which grievance is being pressed; the object of the answer is to indicate to the plaintiff which defenses are being relied upon. What have been thought to be the objects of pleading—the narrowing of issues, the revelation of facts—will be served by several devices more precisely adapted to their fulfillment: the familiar motions for certainty, the new pre-trial hearing, and the not new but completely renovated procedure for depositions and discovery."

"A complaint attacked by motion to dismiss under

Fed. R. Civ. P. 12 is entitled to liberality of construction. *Bound Brook Water Co.* v. *Jaffe,* 284 F. Supp. 702, 708-709 (D. N. J. 1968). There is no requirement under the Federal Rules that the complaint either state a cause of action, *Michael* v. *Clark Equip. Co.,* 380 F. 2d 351, 352 (2d Cir. 1967), or allege the detailed facts which support the claims raised therein. *Austin* v. *House of Vision, Inc.,* 385 F. 2d 171, 172 (7th Cir. 1967). All that is required of a complaint is that it state a claim upon which relief can be granted. *Michael* v. *Clark Equip. Co., supra." Thurston* v. *Setab Computer Institute* (S. D. N. Y.), 48 F. R. D. 134 at page 135.

The Supreme Court of the United States has spoken on this point in *Conley* v. *Gibson,* 355 U. S. 41, 45, wherein the court said:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

The details are available to this defendant through the utilization of the pretrial discovery techniques—Rules 26-37 inclusive.

The petition was filed December 17, 1969, and the judgment entry from which this appeal is perfected was filed June 29, 1971. As the Rules of Civil Procedure became effective July 1, 1970, this case spanned the transition period from the statutory procedure to that governed by the rules. However, Rule 86 states that the Civil Rules govern "all further proceedings in actions then pending" excepting those where such application would not be feasible or would work an injustice. We know of no reason why the Rules should not govern this proceeding.

Our dissenting colleague has cited authority from other states to bolster his position. We think that is unnecessary and in fact prohibited when we have an Ohio case directly in point—*Preston* v. *Brown, supra*—which stands unreversed and unmodified.

We realize that it is difficult to discard old concepts, but do it we must. Rule 1B places emphasis on liberal construction rather than technical interpretation.

We desire to make the suggestion that, since plaintiff wishes to buy and defendant wishes to sell, counsel for both litigants attempt to reach a settlement satisfactory to both parties. However, if no settlement is made and the matter comes to this court again on appeal and the evidence shows that plaintiff took action in reliance on a promise wherein substantial sums were expended by plaintiff, we intend to follow the principles of equity and law enunciated in *King's Heirs* v. *Thompson,* and *Preston* v. *Brown.*

The judgment of the trial court is therefore reversed and this cause is remanded with instructions.

*Judgment reversed.*

ABELE, P. J., concurs.
STEPHENSON, J., dissents.

STEPHENSON, J., dissenting. This writer is of the view that summary judgment was properly entered below and the judgment should be affirmed.

The motion for summary judgment appears to have been granted by the trial court on the ground of lack of consideration. This was not a ground urged by appellee in the motion for summary judgment. In order to base a summary judgment on this ground, it would have been necessary that the allegations of the petition which supported enforcement on the basis of promissory estoppel be negated factually by proper supporting documents. Since appellee, the moving party, was not seeking summary judgment on that ground, it was, of course, not done. Hence, this writer would agree that the entry of summary judgment on that basis was improper.

The principal ground advanced by appellee was that, as a matter of law, appellant could not recover because, in substance, the alleged contract contained no agreement as

to price. Appellee is correct in this contention for the following reasons and an affirmance of the summary judgment should follow.

It must be remembered that the sole nature of the suit below was an action seeking specific performance. From early times, Ohio has followed the rule that specific performance of contracts will be granted only when the terms therein are certain and do not require subsequent arrangements to adjust their details and settle their terms. *The State of Ohio* v. *The Heirs of M. Baum And Others,* 6 Ohio 383, 49 Ohio Jurisprudence 2d 508, Specific Performance, Section 16 and cases therein cited. This is the rule of almost universal application. 49 American Jurisprudence 42, Specific Performance, Section 29.

The right to purchase, by which appellant seeks specific performance, is embodied in the following letter:

"Dear Mr. Deval:

"This refers to your Association's request that it be given the first refusal to purchase property fronting along the west side of Third Street situate north of Butler Street.

"This will advise that should the Railroad Company relocate its freight facilities from Marietta to West Marietta prior to June 1, 1969 and prior to that date place its property in Marietta on the market for sale, the Railroad Company will give to Washington County Farm Bureau Cooperative Association the first refusal to purchase so much of the premises outlined in green on attached print to which the Railroad Company has fee title. Such purchase shall be upon terms and conditions approved by the President and Directors of the Baltimore and Ohio Railroad Company and conveyance shall be subject to driveways, zoning restrictions, easements and servitudes howsoever created, etc. Very truly yours, (signed) E. E. Phipps."

Although described as an option in appellant's petition, it clearly is not, since an option, itself a contract, is a continuing offer to sell during the duration of its existence which on being exercised becomes a new, binding, and enforceable contract. The right acquired here is more

properly designated a "right of first refusal," "first right to buy," or "right of pre-emption." 1A Corbin, Contracts, Section 261, 49 American Jurisprudence 2d 384, Landlord and Tenant, Section 368. The owner under such right is not obliged to sell and the holder of the right has no privilege to demand a conveyance at any time prior to the property being offered for sale. Whatever name may be applied to the "right" and whether it be considered a form of option or not, the requirement of certainty of terms is still applicable.

It is evident that no price has been agreed upon by the above. "The general rule is that price or compensation is an essential ingredient of every contract for the transfer of property * * * and must be definite and certain or capable of being ascertained from the contract itself. By this it is not meant that the exact figures must be stated in the agreement; however, where that is not the case, the price must, by the terms of the agreement, be capable of being definitely ascertained." 17 American Jurisprudence 2d 422, Contracts, Section 82. And when, with respect to agreements, as here, wholly executory, the reservation to a party of an unlimited right to determine the nature and extent of compensation he will make renders his promise too indefinite to be enforceable. 17 American Jurisprudence 2d 425, Contracts, Section 83.

The grant of the right here in question to appellant wherein it states "Such purchase shall be upon terms and conditions approved by the President and Directors of the Baltimore and Ohio Railroad Company" gives to such owner either (1) the right to dictate the price or (2) carry on further negotiations of the price. By either view, appellant cannot prevail. See *In re McVoy's Estate*, 94 N. Y. S. 2d 396.

The cases upon the question here presented are collected in the annotation in 2 A. L. R. 3d 701. At page 703, it is stated, after distinguishing the cases where there is a provision for price as fixed by a sale to others, or where there is a provision for a price at fair market value, or where there is a specific price limitation, the following:

"On the other hand, option agreements have generally been held unenforceable for lack of definiteness of price if the parties both fail to provide for a specific price to be paid for the property, and also fail to specify a practicable mode by which the price can be determined with certainty by the court *without any new expression by the parties themselves.*" (Emphasis added.)

The following are illustrations of provisions which have been held unenforceable:

"The parties of the first part agree that if they should sell two lots adjoining this tract on the east, they shall give the parties of the second part first choice." *Rolfs* v. *Mason*, 202 Va. 690, 691, 119 S. E. 2d 238, 239.

"Said lessor agrees, whenever he shall offer the above-described land for sale, he will give said lessee the first opportunity to buy the same." *Wolf* v. *Lodge*, 159 Iowa 162, 163, 140 N. W. 429.

"If the premises are for sale at any time, the lessee shall have the refusal of them." *Fogg* v. *Price*, 145 Mass. 513, 515, 14 N. E. 741, 743.

While it could hardly be disputed that it is not the function of a court to rewrite a contract for the parties, there is authority to support a view that even if a price is not specified, and unless the context of the agreement specifies otherwise, a first right of refusal imports and implies a right to purchase on the same terms and at the same price as contained in a bona-fide offer from a third person acceptable to the owner. *King* v. *Dalton Motor, Inc.*, 109 S. W. 25 and authorities cited in footnote 6.

In *King,* the price was to be "negotiated and to be agreeable between the parties at time of sale." The court held the general meaning of the "first option to buy" inapplicable and that the provision was fatally defective. In my view, the phrase "shall be upon terms and conditions approved by the President," etc. is of like tenor. Even if it is not and accepting, arguendo, the implication that a price contained in a bona-fide offer from a third person would be acceptable to the owner, there is no evidence that such a bona-fide offer has been made or accept-

ed. Hence, appellant's pre-emptive right was still dormant and no duty to convey was placed on appellee.

With respect to implications within the agreement in question, appellant urges that an implied provision exists that the price would be one based on fair market value. There are cases which uphold, as against claims of uncertainty, the right of specific performance when such a clause is specifically inserted by the parties. *Portnoy* v. *Brown*, 430 Pa. 401, 243 A. 2d 444.

In *Wolf* v. *Lodge, supra*, at 165, the agreement provided: "Whenever he shall offer the above described land for sale, he will give the lessee the first opportunity to buy the same." To the argument that this required an offering and determination of price at a reasonable or fair price, the court stated, at 165:

"Nothing in the instrument indicates a purpose of the parties to limit the price to the fair or reasonable value of the land. The lessor in no manner limited his right to retain the property indefinitely, and, as we think, did not intimate at what price, whether reasonable or otherwise, he would sell. Nor did he undertake that he ever would offer to sell. He merely stipulated that, whenever he should offer the land for sale, he would afford the lessee the first opportunity to buy. But he did not undertake to name a price in putting it on the market, nor did he agree that opportunity to buy should be at a specified sum or one in some manner to be ascertained."

The majority opinion agrees that appellant has no right to specific performance yet reverses the judgment. The rationale adopted for the reversal is readily apparent. The reversal here is for a remand to the trial court for further proceedings upon the *assumption* that appellant desires to seek to recover a money judgment for improvements erected on the premises upon the ground of unjust enrichment. This writer is confident this assumption will be a surprise to the parties and trial court below since no claim for such relief appears in any pleadings, motions, brief or arguments in the trial court or this court. The only reference in appellant's brief to such improvements is in

support of an argument of enforceability of the agreement irrespective of consideration.

An examination of the petition, filed prior to the effective date of the Rules of Civil Procedure, discloses that only a cause of action for specific performance was pled and the only relief sought was the specific enforcement of the agreement. No cause of action for money was pled, hence, no summons bearing an amount of money sought was ever issued; nor was, after the effective date of the Civil Rules, any amendment as to relief in the form of the money for improvements made, demanded or even re-- quested. Neither, after announcement of the court's decision below, was any request made that the case be retained for such purpose. Instead, appellant elected to stand on the sole issue below of whether specific performance would lie.

This appeal, thus, devolves into the dispositive question of whether summary judgment must be denied in a specific performance action where, as a matter of law, the remedy will not lie if there exists a potential but unasserted right to recover for improvements. The answer, in the view of this writer, is clearly no. It is not a question of whether a trial court could, under such circumstances, retain the suit for such purpose under the principle that the jurisdiction of an equity court once invoked will be retained to give complete justice between the parties, but, rather, where no such potential claim is raised and placed in issue, it must do so.

It is interesting to note in the two cases cited in the majority opinion, *King's Heirs* v. *Thompson*, 34 U. S. 204 and *Preston* v. *Brown*, 35 Ohio St. 18, that in *King's Heirs* the relief sought was pled in the alternative and, thus, placed in issue at trial and in *Preston* the Ohio Supreme Court, in commenting on *King's Heirs,* noted a demand for alternative relief was made. Additionally, in *King's Heirs,* unlike here, the parties making the improvements, upon the denial of specific performance relief, applied to the trial court and were granted a judgment for the value of the improvements. It was from the grant of such latter

judgment, and not the denial of specific performance relief, that was the subject matter of the appeal.

It is the conclusion of the writer that whatever remedies appellant may have by virtue of its "right," it must now seek them in a separate proceeding. Summary judgment was properly entered below and I would affirm.