STIBORA et al., Appellants,

v.

GREATER CLEVELAND BOWLING ASSOCIATION et al., Appellees.

[Cite as *Stibora v. Greater Cleveland Bowling Assn.* (1989), 63 Ohio App.3d 107.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55638.

Decided Aug. 7, 1989.

*George Wm. Joseph, Jr.,* for appellants.

*Jay Clinton Rice* and *Ernest W. Auciello, Jr.,* for appellees Ambassador West Lanes & Lounge and Harry Knappage.

*Mark E. Staib, S. Scott Lasher, K. Thor Lundgren, Robert Shuftan* and *Kathy P. Saxton,* for appellees American Bowling Congress and Greater Cleveland Bowling Association.

---

WIEST, Judge.

The twenty-five plaintiffs-appellants appeal the summary judgments rendered in favor of defendants-appellees Greater Cleveland Bowling Association ("GCBA"), American Bowling Congress ("ABC"), Ambassador West Lanes ("Ambassador Lanes") and Harry Knappage ("Knappage").

The following facts emerge from the various pleadings, affidavits, transcript excerpts and exhibits in the record.

On October 30, 1986, appellants, bowlers in an ABC-sanctioned league at Ambassador Lanes, filed suit against GCBA, ABC, Ambassador Lanes and its manager, Knappage. Count one sought damages from GCBA and ABC for the alleged wrongful suspension of appellants' memberships in these organizations. Count two sought damages from Ambassador Lanes and Knappage for an alleged conspiracy to violate civil rights. Count three (not argued on appeal) claimed Ambassador Lanes and Knappage intentionally interfered with appellants' contractual relations. Appellants also filed a motion for injunctive relief with their complaint. This motion was denied.

ABC is a non-profit, non-stock membership organization consisting of over 3.5 million male bowlers nationwide. The object and purpose of ABC is to establish uniform rules, conditions and equipment specifications for the sport of bowling in ABC-sanctioned competition, to foster good fellowship among its members, and to maintain competitive fairness and comparability of scoring.

In furtherance of these objectives, ABC has established uniform rules governing the conduct of its members while playing in ABC-sanctioned competition and uniform specifications for bowling lanes, bowling balls and bowling pins. The rules were adopted by delegates from the local bowling associations who were elected by the members of their respective associations. The delegates meet in annual conventions to elect officers, consider amendments and take other appropriate actions. Upon becoming a member, a bowler agrees to be bound by the ABC Rules and grants ABC final jurisdiction over all bowling disputes.

GCBA is also an independent, non-profit, non-stock membership association. GCBA is chartered by ABC as one of its local affiliates. GCBA's responsibilities are to foster the game of bowling in the Greater Cleveland area and to implement the policies, rules and goals of ABC. GCBA is specifically responsible for inspecting lanes seeking ABC's certification and implementing the Outline of Suspension Procedures.

Appellants, members of the Buckeye Westgate Masters League ("League"), negotiated a contract with Ambassador Lanes for the 1985–1986 bowling season. Ambassador Lanes was sanctioned by ABC, through the local affiliate, GCBA. As part of being an ABC-sanctioned establishment, Ambassador Lanes agreed to abide by ABC Rules and regulations.

The League began play in August 1985. Shortly after league play commenced, appellants complained to Knappage that they were dissatisfied with the way dressing [1] was being applied to the lanes.

Upon receiving the complaint, Knappage contacted Bernard Vozar, Executive Secretary/Treasurer of GCBA and asked him to inspect the lanes to determine whether they complied with ABC Rules. Vozar inspected the lanes and concluded that dressing was being applied in compliance with Article 7.

Despite the compliance determination, some league members continued to complain to Knappage. To resolve the continuing dispute, Vozar suggested that the League appoint a "Dressing Committee" and that he would act as mediator. Vozar's mediation attempts were unsuccessful. All members met to decide whether to quit the League. At the meeting, Vozar explained that quitting could result in suspension. Nevertheless, appellants (members of five teams) chose to quit, while the majority of the League members did not quit.

---

1. Lane dressing is oil applied to bowling lanes to protect the lanes' surface from friction created by bowling balls moving down the lanes. If applied improperly, dressing can artificially assist a bowler to bowl higher scores. Article 7 of the ABC Constitution governs the manner in which proprietors may apply dressing to lanes.

Knappage believed that appellants' withdrawal was in violation of ABC Rules and, therefore, reported the withdrawal to GCBA. Since GCBA declined to take action against the bowlers, Knappage brought the suspension charges on behalf of Ambassador Lanes pursuant to ABC Rules 114d and 26b. Upon receipt of Knappage's written charges, Vozar contacted the ABC Rules Department to determine if Knappage, as a nonmember of ABC and GCBA, could properly bring such charges and if such complaints required a suspension hearing. ABC responded affirmatively. Vozar then instituted the due process steps required to hold a suspension hearing under the ABC Rules.

Vozar sent certified letters to all the appellants detailing the charges against them and notifying them that a hearing would be held and that they would have a right to attend and present witnesses, to cross-examine other witnesses, and to be represented by an attorney. Vozar also arranged for a court reporter and a member of the ABC Rules Department to be present.

The hearing was held as scheduled before the GCBA Hearing and Suspension Committee, a panel composed of members of the GCBA Board of Directors, which is elected by appellants and their fellow members.

After the hearing, the Committee met and deliberated and then recommended that appellants be suspended for one year, followed by automatic reinstatement. As required by the Suspension Procedures, this recommendation was forwarded to ABC along with a copy of the entire file, including a transcript of the hearing. Appellants were notified of the Committee's recommendation and their right to submit additional evidence to ABC. The new evidence would then be considered by the ABC Legal Committee, which would make the final decision.

Appellants submitted additional evidence and a brief to the Legal Committee. The Legal Committee, after consideration of the record before it, affirmed the recommendation of GCBA. The suspension took effect on July 1, 1986, and appellants were automatically reinstated on July 1, 1987.

I

First assignment of error:

"The trial court erred in granting defendants' motion for summary judgment."

Two separate motions for summary judgment were filed. We shall address the summary judgment motion of ABC and GCBA first.

Civ.R. 56(C) provides the procedure for summary judgment.

" * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, tran-

scripts of evidence in the pending case, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

■ Mindful that the purposes of summary judgment are (1) the elimination of frivolous lawsuits and (2) the unclogging of the courts' dockets by the expeditious disposal of lawsuits which do not present substantial questions for determination at trial (see *North v. Penna. Rd. Co.* [1967], 9 Ohio St.2d 169, 171, 38 O.O.2d 410, 411, 224 N.E.2d 757, 759, and *Washington Cty. Farm Assn. v. B. & O. RR. Co.* [1972], 31 Ohio App.2d 84, 89–90, 60 O.O.2d 174, 177–178, 286 N.E.2d 287, 290–291), our basic inquiry on review is whether, in light of the record, the trial court's grant of summary judgment can be sustained. *Petrey v. Simon* (1984), 19 Ohio App.3d 285, 287, 19 OBR 456, 458, 484 N.E.2d 257, 259.

■ In order to prevail on appeal, appellants must demonstrate either that there existed a genuine issue of material fact between the parties or that appellees were not entitled to judgment as a matter of law.

■ In order to succeed against ABC and GCBA, appellants must show that ABC's and GCBA's actions were arbitrary, fraudulent or collusive. *Lough v. Varsity Bowl, Inc.* (1968), 16 Ohio St.2d 153, 45 O.O.2d 483, 243 N.E.2d 61, syllabus:

"Where the rules of a voluntary association provide for the final settlement of disputes among its members, its action thereunder will not be reviewed by the courts, in the absence of allegations of arbitrariness, fraud, or collusion, * * * "

■ The complaint makes two allegations against these appellees. Count one alleges that "the act of suspending the Plaintiffs by [ABC and GCBA] was fraudulent and/or arbitrary and was a denial of due process." Count two alleges that "all the Defendants, in bad faith, colluded to deny the Plaintiffs their civil rights and to deny Plaintiffs the due process to which they were entitled." Thus, the complaint makes allegations of fraud, arbitrariness and collusion.

On appeal, appellants contend that there are genuine issues of material fact which preclude summary judgment. Specifically, they argue there are three issues of material fact: (1) what ABC Rules are applicable, (2) whether

Knappage and Ambassador Lanes had standing to bring the charges which initiated the suspension hearing, and (3) whether ABC and GCBA followed the ABC Constitution and their by-laws.

However, we determine that these contentions do not raise any genuine issue of material fact. In essence, appellants base their entire argument on their disagreements with the Associations' interpretations of the ABC Rules. Appellants' burden under *Lough* is to show that the Associations' interpretations were not just wrong, but also arbitrary and undertaken as a willful exercise of power. Appellants' bare allegations asserted in conclusory fashion in an affidavit of one of the appellants,[2] standing alone, are insufficient for meeting this burden. Appellants merely argue that their interpretation of the Rules is correct and the Association's interpretations are incorrect. This is not an issue to be decided by the court. As persuasively stated by the Indiana Supreme Court in *State, ex rel. Givens, v. Superior Court of Marion Cty.* (1954), 233 Ind. 235, 238, 117 N.E.2d 553, 555:

"A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them."

GCBA and ABC afforded appellants due process and reached an impartial decision based on the record. This court will not second-guess their decision. The trial court properly granted summary judgment in favor of ABC and GCBA.

■ We now turn to the summary judgment motion of Ambassador Lanes and Knappage. Appellants argue that Knappage's action in bringing about the suspension charges which prompted the suspension hearing exhibit vengeful, vindictive and punitive behavior. Appellants assert that "there is no question that reasonable men could come to the conclusion that defendant Knappage was seeking revenge and that defendants, ABC and GCBA, were providing him with the means to do so. All defendants were acting in concert and should now, individually and collectively, be accountable for their actions." Again, appellants make this bare assertion without any supporting documentation. Appellants are unhappy with the suspension decision and disagree with the Associations' interpretations. As previously stated, appel-

---

2. The affidavit does not meet Civ.R. 56(E) requirements that it be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that affiant is competent to testify to the stated matter.

lants' disagreements with the determination do not justify judicial intervention. See *Lough, supra.*

Knappage merely reported to ABC that appellants had withdrawn from the League. Appellants admit they withdrew. There was no collusion among the parties nor any unlawful act committed pursuant to a scheme which damaged the appellants. The trial court correctly entered summary judgment for Knappage and Ambassador Lanes.

This assignment of error is meritless.

## II

Second assignment of error:

"The court abused its discretion in not permitting plaintiffs to file an amended complaint."

Appellants sought to amend their complaint in order to "set forth the facts surrounding the collusion."

■ A motion for leave to amend a complaint is within the trial court's sound discretion, and its decision will not be disturbed on appeal without an affirmative showing of an abuse of discretion. *State, ex rel. Wargo, v. Price* (1978), 56 Ohio St.2d 65, 66, 10 O.O.3d 116, 381 N.E.2d 943.

■ Here, the court's failure to rule upon the motion for leave to amend was not an abuse of discretion since the proposed amended complaint advanced the same claims contained within the original complaint. Thus, appellants were not prejudiced by the court's failure to rule upon their motion. This assignment of error is not well taken.

Both assignments of error having been overruled, the judgment will be affirmed.

*Judgment affirmed.*

DAVID T. MATIA, P.J., and STILLMAN, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, and MARK K. WIEST, J., of the Wayne County Court of Common Pleas, sitting by assignment.