TUCKER

v.

NATIONAL ASSOCIATION OF POSTAL SUPERVISORS,
CLEVELAND BRANCH 46. █

2003-Ohio-2994.]

Cleveland Municipal Court, Ohio.

No. 2002 CVI 28059.

Decided March 24, 2003.

Lee A. Tucker, pro se.

Marlene Hargrove–Smith, defendant's president, for defendant.

JOSEPH J. ZONE, Judge.

{¶ 1} This case was set for trial on March 10, 2003, before Magistrate William F.B. Vodrey. Present and testifying were both plaintiff and defendant's president, Marlene Hargrove–Smith. Also testifying for plaintiff were Joyce Shaffner, defendant's recording secretary; David Oliver, defendant's president from 1995–2002 and now a trustee; and Ezelle Graham, an associate (i.e., retired) member of defendant. Also testifying for defendant were Ernest Ware, defendant's recording secretary from 1996–2002, Rosemarie Phillips, defendant's financial secretary; and Lillie Paige, defendant's treasurer.

{¶ 2} After due consideration of the testimony and exhibits, the court hereby approves and confirms the magistrate's decision, which is as follows.

FINDINGS OF FACT

{¶ 3} Defendant, National Association of Postal Supervisors ("NAPS"), Cleveland Branch 46, is a nonprofit corporation, established "to unite fraternally and socially all postal supervisors in the Cleveland district * * * for the mutual welfare of its members." Joint Exhibit 1, NAPS Branch 46 Constitution & Bylaws (January 1996), Article II, at 1. Plaintiff, a former supervisor who retired from the United States Postal Service on March 3, 1999, is an associate member of Cleveland Branch 46 of NAPS ("the branch"). He was appointed the branch's legislative chair and served in that capacity from March 2000 to March 2002.

{¶ 4} The branch membership meets monthly, except in August. Id., Article IV, at 2. An executive board composed of the branch's elected officers typically meets a few days before the monthly meeting of all the branch's members. The executive board handles the routine business of the branch between meetings of the membership, or when a quorum is lacking at a regular monthly meeting. Id., Article V, at 2; Section 7, Article VI, at 5.

{¶ 5} At its regular monthly meeting in February 2002, the branch's membership adopted a prospective list of delegates to the NAPS national convention that August. Attending a convention is valued by NAPS members for its social, networking, entertainment, and service opportunities, as well as the chance to gain experience that may lead to advancement or elective office within NAPS. Conventions are held every even-numbered year. Under branch rules, an associate member cannot be a convention delegate unless he or she has paid the branch's $30 dues for the previous calendar year and has attended at least five meetings in that year. Id., Sections. 2, 8, 9, Article VII, at 6–7; Branch Bylaws, Section 1, Article III, at 12. The parties agreed that plaintiff attended six meetings in 2001, one more than was required to be eligible to serve as a delegate. Plaintiff's name appeared on the February list of prospective delegates.

{¶ 6} At the July 2002 monthly meeting, plaintiff's name again appeared on the approved delegate list for the branch, and he was duly elected a delegate. The branch cannot send as many delegates as it wishes to national conventions; it may send only a portion of its overall membership according to a formula set forth by the national organization. Joint Exhibit 1, NAPS Branch 46 Constitution & Bylaws (January 1996), Sections 3 and 4, Article VII, at 7. The branch's constitution explicitly permits associate members to serve as delegates. Id., Clauses 3–5, Section 2, Article VII, at 6. The branch's election committee must certify the eligibility of prospective delegates. Id., Section 9, Article VII, at 7. The testimony clearly established that plaintiff was so certified.

{¶ 7} Plaintiff had been to NAPS conventions before and each time had been paid a delegate fee by the branch to help cover his expenses. This was customary for the branch. Branch Bylaws, Section 3, Article III, at 13. Plaintiff traveled to Greensboro, North Carolina, for the NAPS convention, which ran from August 5–9, 2002. On the evening of August 6, Hargrove–Smith, president of the branch, called a meeting of the executive board in her hotel room. At that time, branch officials distributed delegate-fee checks of $1,331 apiece. Plaintiff was the only delegate not given a check, and when he asked why, was told that he was ineligible because he was an associate, or retired, member of the branch. He protested this decision. There was a heated discussion, and branch vice president Bill Paige suggested that the question of plaintiff's delegate fee be tabled until the next monthly meeting of the membership in September. Hargrove–Smith agreed and, due to the tensions of the meeting, asked everyone who was not a member of the executive committee to leave her hotel room. Plaintiff and others complied with Hargrove–Smith's request.

{¶ 8} David Oliver, who had been the branch's president from 1995–2002 and was a trustee at the time of the convention, was among those who left the room. Shortly afterwards, however, he was asked to return. Hargrove–Smith then chaired an impromptu meeting of the executive board. Oliver believed that the meeting should not take place, as the question of plaintiff's delegate fee had earlier been tabled, and he said so. When urged, however, he made a motion to pay plaintiff a delegate fee. His motion was seconded, but then defeated with only Oliver voting in favor. Plaintiff was not in the room when this vote was taken.

{¶ 9} Plaintiff soon found out about the vote, however, and resolved to raise the issue at the next monthly meeting of the branch. At the branch's September meeting, a quorum was lacking, so plaintiff did not do so. At the October 12, 2002 meeting, plaintiff made a motion that he be paid the same $1,331 fee as the other delegates. Hargrove–Smith was absent from this meeting, but branch officials led by vice president Bill Paige tried to keep the matter from coming to a vote. They argued that it had already been decided and that, under Robert's Rules of Order, the membership could not reconsider a decision of the executive board unless two executive board members who had been in the majority moved and seconded the question. Some also argued that, since plaintiff was a NAPS retiree, he was ineligible to receive a delegate fee. The membership was not persuaded, however, and by majority vote decided to award plaintiff the delegate fee he sought.

{¶ 10} Later, Hargrove–Smith and other officers opposed to paying plaintiff a delegate fee argued that plaintiff had not paid his branch dues for the previous calendar year. However, Oliver testified that this had not been given as a reason

for barring payment of plaintiff's delegate fee at either the August 6 executive board meeting or the October 12 general membership meeting. Plaintiff testified that he had paid his 2001 dues in cash; this was disputed by the branch's financial secretary, Rosemarie Phillips. It was undisputed that plaintiff paid his 2000 and 2002 branch dues. The parties also agreed that defendant has not, to date, paid plaintiff a delegate fee.

{¶ 11} At trial, there was testimony as to past, ad hoc payments to those attending NAPS conventions. In August 1998, at the convention in New Orleans, Louisiana, delegates "passed the hat" to help defray the expenses of retiree Ghanious Smiley, but there was no formal vote to do so, and branch funds were not drawn upon. In August 2000, Joyce Shaffner, who is now the branch's recording secretary, attended the NAPS convention in Anchorage, Alaska. Her daughter lived in Fairbanks, and Shaffner wished to combine a family visit with attending the convention. Although she was not a delegate, Shaffner's hard work at the convention was noticed by the delegates, and after the branch's contingent returned to Cleveland, the branch voted to give Shaffner $1,000 to defray her expenses. Shaffner had not sought this grant but was surprised and pleased by it.

{¶ 12} There was also testimony that the branch had a policy, dating to sometime between 1990 and 1995, of paying only the registration fees of associate (retiree) members attending conventions. Registration fees are usually only a nominal amount. However, defendant's witnesses conceded that this policy was never incorporated into the branch's constitution or bylaws, and plaintiff testified that he was unaware of it.

## CONCLUSIONS OF LAW

{¶ 13} A court ought not to intervene in the decisions or internal disputes of a voluntary organization unless there is a showing of fraud, arbitrariness, or collusion. *Lough v. Varsity Bowl, Inc.* (1968), 16 Ohio St.2d 153, 45 O.O.2d 483, 243 N.E.2d 61; *State ex rel. Ohio High School Athletic Assn. v. Judges of Court of Common Pleas* (1962), 173 Ohio St. 239, 19 O.O.2d 52, 181 N.E.2d 261; *Hennekes v. Maupin* (1963), 119 Ohio App. 9, 26 O.O.2d 97, 192 N.E.2d 204; *Gallagher v. Harrison* (1949), 86 Ohio App. 73, 88 N.E.2d 589; *Boblitt v. Cleveland* (1943), 73 Ohio App. 339, 29 O.O. 65, 56 N.E.2d 348. See, also, *Internatl. Union of Steam & Operating Engineers v. Owens* (1928), 119 Ohio St. 94, 162 N.E. 386; *Stibora v. Greater Cleveland Bowling Assn.* (1989), 63 Ohio App.3d 107, 577 N.E.2d 1175. While it is not generally the function of the courts to control the policies or internal affairs of voluntary organizations, the courts may and should protect the democratic processes of those organizations and vindicate the rights of their members. *Crossen v. Duffy* (1951), 90 Ohio App. 252,

271, 47 O.O. 241, 103 N.E.2d 769. This is particularly true if the organization's actions are "not just wrong, but also arbitrary and undertaken as a willful exercise of power." *Stibora,* 63 Ohio App.3d at 113, 577 N.E.2d 1175. Courts should determine the outcome of such disputes by reference both to the organization's internal rules and to neutral principles of state law. *Serbian Orthodox Church Congregation of St. Demetrius of Akron v. Kelemen* (1970), 21 Ohio St.2d 154, 50 O.O.2d 367, 256 N.E.2d 212.

■ {¶ 14} For the reasons which follow, the court believes that plaintiff has shown arbitrariness and collusion by defendant's officials and that the democratic processes of the branch were subverted by those officials, thereby violating plaintiff's rights as an associate member and duly-elected convention delegate. The executive board's actions on August 6, 2002, and thereafter, were clearly "not just wrong, but also arbitrary and undertaken as a willful exercise of power."

{¶ 15} The court is not persuaded that plaintiff was ineligible to receive a delegate fee under branch rules, either because he was an associate member, or for·having allegedly failed to pay his dues for calendar year 2001. As noted above, the purported rule barring associate members from having their delegate fees paid by the branch was never written into the branch's constitution and bylaws, and plaintiff credibly testified that he was unaware of such a policy. There was testimony that the trend in NAPS governance has been to fully include associate members in the work of the organization; indeed, Mr. Graham testified that were it not for associate members, the branch would often lack a quorum to conduct its business at monthly meetings. In light of this, the court is unpersuaded that the branch's never-codified "rule" against paying associate members' delegate fees should bar plaintiff from such payment.

{¶ 16} As to plaintiff's membership status, the parties agreed that plaintiff attended sufficient meetings in the prior calendar year to be eligible to serve as a delegate. Plaintiff credibly testified that he had paid his 2001 dues in cash, and his eligibility to be a convention delegate was confirmed by the branch at its meetings in both February and July 2002. The court is not persuaded by the November 9, 2002 handwritten, one-sentence statement of Rosemarie Phillips, defendant's financial secretary, that plaintiff was "not in good standing for the calendar year of 2001." Defense Exhibit 2. This document was prepared long after plaintiff was twice chosen as a convention delegate, and a month after the branch's general membership had voted to award him a delegate fee over the objections of branch officials. The exhibit is, in the court's view, conclusory and outweighed by the other evidence. At both the February and July 2002 meetings of the branch, plaintiff was duly elected as a delegate to the NAPS convention. He went to the convention with the reasonable expectation that he would be paid a delegate fee, as all other delegates were.

{¶ 17} When Hargrove–Smith closed the August 6, 2002 executive board meeting to nonboard members, she acted improperly under the branch's constitution, which provides that "[a]ny member may attend a meeting of the executive board at no expense to the organization, provided he/she does not disrupt or interfere in their deliberations, and sufficient seating space is available." Joint Exhibit 1, NAPS Branch 46 Constitution & Bylaws (January 1996), Section 8, Article VI, at 5. Although several witnesses agreed that the discussion became heated after plaintiff was denied a delegate-fee check, there was no testimony that anyone disrupted the meeting or interfered in deliberations or that there was insufficient seating space. In asking people to leave, and then voting upon the very issue that most members thought had been tabled for action at the September meeting, the executive board clearly acted to avoid robust discussion of its decision, thereby abusing its authority to plaintiff's detriment.

{¶ 18} Branch officials then did all they could to prevent the issue from being revisited at the branch's general meeting of October 12, 2002. The court found highly persuasive the testimony of Ezelle Graham, an associate member with over 30 years of NAPS experience, including extensive work on the branch's constitution and bylaws, and revisions thereto. Graham testified that there was nothing to prevent the branch's membership from taking up the issue of plaintiff's delegate fee at their October 12 meeting. The court has reviewed the branch's constitution and bylaws, and also draws upon its own familiarity with Robert's Rules of Order, under the terms of which the branch conducts its business. Branch Bylaws, Section 9, Article I, at 11. The branch's general membership clearly acted within its rights at the October 12 meeting in voting to award plaintiff a delegate fee. An executive board cannot prohibit the membership at large from deciding an issue, especially if that issue has earlier been improperly voted upon by the board. The tail cannot wag the dog.

{¶ 19} An executive board stands in a fiduciary relationship to an organization's rank-and-file members. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 69 O.O.2d 512, 321 N.E.2d 603; *Behm v. Victory Lane Unit Owners' Assn., Inc.* (1999), 133 Ohio App.3d 484, 728 N.E.2d 1093. Hargrove–Smith was not justified in withholding a delegate fee from plaintiff in the first place. In failing to convey funds to plaintiff as authorized by vote of the membership at the October 12, 2002 meeting, she thwarted the will of the majority and violated her fiduciary responsibility as president of the branch.

## HOLDING

{¶ 20} Plaintiff has proven his case by a preponderance of the evidence. Accordingly, judgment is granted for plaintiff in the amount of $1,331.

{¶ 21} IT IS SO ORDERED.

Judgment for plaintiff.