OPINION
{¶ 1} This is an appeal from a summary judgment for the employer on an employee's intentional tort claim.
 {¶ 2} Plaintiff, Fifi Howard, was assigned by her employer, Spherion Lima, Inc., a temporary employment agency, to work at Defendant Classic Container, Inc.'s manufacturing facility in Springfield, which operated as Jet Corr Classic, Inc. On the third day of her assignment, Howard was selected by Tracy Reed, a band saw operator, to assist Reed as a helper, or "catcher", of corrugate materials that Reed would cut into sections using the band saw. While she was performing her work, three fingers of Plaintiff Howard's left hand were severed when it came into contact with the moving band saw blade.
 {¶ 3} Howard commenced the action underlying this appeal against Jet Corr, Inc., Classic Container, Inc., and Spherion Lima, Inc. on claims for relief alleging an employer intentional tort, violations of R.C. 4101.11 and R.C. 4101.12, and violations of Federal and Ohio industrial safety regulations. After Howard voluntarily dismissed her claims against Spherion Lima, Inc., Defendants Jet Corr, Inc. And Classic Container, Inc. (hereinafter together "Classic Container") moved for summary judgment. Plaintiff Howard then abandoned all but her employer intentional tort claim, also opposing Classic Container's motion. The trial court granted the motion and entered summary judgment for Classic Container. Howard filed a timely notice of appeal.
 {¶ 4} On appeal, Howard argues that the trial court erred when it granted summary judgment for Classic Container because genuine issues of material fact exist with respect to the evidence that was before the court relevant to the tests for employer intentional tort set out in Fyffe v. Jeno's Inc.
(1991), 59 Ohio St.3d 115.
 {¶ 5} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First NationalBank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles (1992), 63 Ohio St.3d 326. Further, the issues of law involved are reviewed de novo. Nilavar v.Osborn (1998), 127 Ohio App.3d 1.
 {¶ 6} Employers who participate in Ohio's Workers Compensation Fund are not liable for injuries or death suffered by their employees that arise out of or in the course of the employment relationship. R.C. 4123.74. An exception to that immunity from liability applies to employee claims proximately caused by an employer's intentional tort. Jones v. VIPDevelopment Co. (1984), 15 Ohio St.3d 90. In Fyffe v. Jeno'sInc., the Supreme Court held:
 {¶ 7} "1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser 
Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988],36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)
 {¶ 8} "2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. (Van Fossen v. Babcock Wilcox Co. [1988],36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)
 {¶ 9} "3. Upon a motion for summary judgment, when a court is asked to inquire as to whether an employer has committed an intentional tort and evidence is submitted tending to show the employer has deliberately removed a safety guard from equipment which an employee is required to operate, and such equipment occasions the employee's injury, this evidence should be considered along with other evidence in support of, and contra to, the motion for summary judgment in cases where the cause of action accrues prior to the enactment of Sub. S.B. No. 307, effective August 22, 1986, codifying R.C. 4121.80(G)(1)." Id.,
Syllabus by the Court.
 {¶ 10} The parties submitted extensive evidence by deposition concerning Howard's injury and the circumstances that occasioned it. Essentially, they show that Howard had worked her first two days at Classic Container performing other tasks when she was selected by Tracy Reed to work as a catcher for Reed's operation of a band saw. Reed's task was to pass corrugate material across the table of the saw and through its blade, cutting the material into two sections. Each succeeding operation would then push the severed materials off the table of the saw and forward onto a wood table adjacent to the saw. The wood table was rectangular in shape, and the "catcher" ordinarily stood at the far end of the table to remove the materials from the far end of the wood table as they reached that point, and then pack them into a box.
 {¶ 11} While the issue is disputed, Plaintiff Howard testified that, contrary to practice, Reed instructed her to instead stand at a point at the long side of the wood table to catch the materials after they passed through the band saw, bringing Howard to within an arm's length of the moving saw blade. Regardless of how she was instructed, it seems reasonably clear that Howard must have been standing at that approximate position when her hand came into contact with the moving blade, because had she been standing at the far end of the table she could not have reached the blade due to the length of the table, which would have made contact with the saw blade impossible.[1]
 {¶ 12} In addition to how she was instructed by Reed to perform her job as a catcher, which Howard analogizes to removal of a safety guard, Howard points out that she was given no instructions on how to avoid injury from the saw, that she was inexperienced in the work she performed, and that Classic Containers's managers conceded in their deposition that operation of the saw is a dangerous procedure.
 {¶ 13} For its part, in addition to disputing Plaintiff Howard's statement about where she was told to stand, Classic Container points to a very low incidence of injuries from the band saw's operation, that the saw bore signage warning of its dangers, that Tracy Reed told Howard that Reed would assist her in removing materials from the table should Howard fall behind, and that the dangers the saw's operation presents are open and obvious.
 {¶ 14} These presentations were made in extensive depositions of Howard, Reed, and Classic Containers's managers. In addition, Howard presented the deposition testimony of Gary P. Maul, Ph.D., an expert on safety procedures in manufacturing. In ruling on the motion for summary judgment that Classic Containers filed, the trial court reviewed the three prongs of Fyffe v. Jeno's Inc.,
and stated:
 {¶ 15} "The Court being immediately drawn to the second prong of the Fyffe test, finds, even upon reviewing the evidence in a light most favorable to the plaintiff, that there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law because reasonable minds can come to only one conclusion — that the accident/injury was not substantially certain to occur. Specifically, the Court finds that given the totality of the circumstances, the accident/injury, while foreseeable, was not substantially certain to occur.
 {¶ 16} "The Court believes the following facts to be compelling evidence that the accident/injury was not substantially certain to occur: (1) During the nineteen years preceding the plaintiff's injury, only one band saw related accident/injury occurred to an employee; (2) said prior accident/injury was relatively minor, requiring only a band-aid and Neosporin for treatment; (3) said accident/injury occurred because the employee admitted she was not paying attention to what she was doing at the time; (4) said accident/injury involved an employee who was actually operating the band saw whereas the plaintiff herein was merely assigned the duty of catching on the band saw and therefore had no reason to come within arms reach of the band saw; (5) the wooden table that plaintiff identifies as a `guard' was never moved; and (6) the plaintiff has failed to offer any evidence that the accident/injury was substantially certain to occur.
 {¶ 17} "There is no question that the plaintiff was working in close proximity to a dangerous instrumentality which posed a known, and therefore, foreseeable risk of injury. However, the defendants had no knowledge, whether factual, constructive, legal or otherwise, that injury to plaintiff was substantially certain to occur. `The mere knowledge and appreciation of [a] risk, while it may suggest negligence, does not constitute intent.' Despasv. Cleveland Cement Co., 2001 Ohio App. Lexis 2733 (2001). `Something more than a dangerous situation is needed to establish existence of a genuine issue of material fact regarding whether an employer knew that injury was substantially certain to occur.'Id. The Court in Berge v. Columbus Community Cable Access,136 Ohio App.3d 281 (1999) explained:
 {¶ 18} `Even if injury is foreseeable, and even if its is probable that the injury would occur if one were exposed to the danger enough times, there is a difference between probability and substantial certainty . . . the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent . . . Unless the employer actually intends to produce the harmful result or knows that injury to its employee is certain or substantially certain to result from the dangerous instrumentality or condition, the employer cannot be held liable . . . Accordingly, an intentional tort action against an employer is not shown simply because a known risk later blossoms into reality . . . Rather, the level of risk exposure [must be] so egregious as to constitute an intentional wrong.'
 {¶ 19} "This February 27, 2001 accident/injury is a tragedy. Nevertheless, the level of risk to which the plaintiff was exposed by the defendants was not at all egregious but very reasonable. The level of risk to which the plaintiff was exposed certainly was not so egregious as to constitute an intentional wrong. This Court cannot render a legal opinion on an issue not before it, however, it would appear, barring eligibility issues unknown to this Court, that this is exactly the type of situation the workers' compensation system is designed to remedy.
 {¶ 20} "Accordingly, the defendant's motion for summary judgment on count one of the complaint is SUSTAINED." (Decision and Entry, pp. 2-3).
 {¶ 21} The three-prong test of Fyffe v. Jeno's Inc. is cumulative; that is, all three elements must be proved. We agree with the trial court that on this record whether summary judgment lies turns on an application to these facts of the second prong of the test for employer intentional tort in Fyffe v. Jeno's,Inc.; "knowledge by the employer that if the employee is subjected by his employment to (the) dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty." Id. The issue is whether, on the record before the court, and construing the evidence most strongly in favor of Plaintiff Howard, reasonable minds could reach no other conclusion but that no genuine issue of material fact exists with respect to that matter and Defendant Classic Containers is therefore entitled to judgment on Howard's claim for relief as a matter of law. Civ.R. 56(C).
 {¶ 22} The "reasonable minds" test is expressly embodied in Civ.R. 56(C). The test does not require the exclusion of even the slightest doubt. But, properly applied, the test permits summary judgment only where it is quite clear what the truth is, and summary judgment is disfavored whenever there is a realistic possibility that genuine issues of material fact will require jury consideration. Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272. Where facts are subject to reasonable dispute, summary judgment is not appropriate. Jackson v. Kings Island
(1979), 58 Ohio St. 2d 357.
 {¶ 23} After making reference to the reasonable minds rule, the trial court applied the "totality of the circumstances" test to find that the injury Howard suffered was not substantially certain to occur. To the extent that the test involves consideration of all the evidence presented, it is in accord with Civ.R. 56(C). However, as applied, the totality of the circumstances test typically requires the trier to weigh one or more circumstances against others, and summary judgment does not permit the court to weigh the evidence. The court must instead evaluate the evidence against the standard Civ.R. 56(C) imposes. If in doing so the court must rely on an inquiry into the surrounding facts and circumstances, it should refuse to grant a motion for summary judgment until the facts and circumstances have been sufficiently developed to enable the court to be reasonably certain that it is making a correct determination of the question of law involved. Washington County Farm Bur. Co-OpAssoc. v. BO R.R. Corp (1972), 31 Ohio App.2d 84.
 {¶ 24} The "substantial certainty" of injury prong in Fyffev. Jeno's Inc. presents a mixed issue of fact and law and has resulted in a multitude of holdings concerning what it means. InFyffe v. Jeno's Inc. the Supreme Court rejected subjective intent to injure as necessary to prove an employer intentional tort. The court stated: "It is argued that some industrial activities that involve a high risk of harm, or where the risk of harm is great, may reasonably encompass situations that fall within the scope of an `intentional tort.' We conclude that this is a reasonable argument." Id., at 117.
 {¶ 25} The focus of the "substantial certainty" test, then, is the risk of injury that a particular industrial process or activity presents. This prompts two observations. First, industrial activities are typically more dangerous than others, and to that extent some particular risk of harm is frequently involved. Second, in order to satisfy the test, a plaintiff must prove that the risk of harm is great. In making that determination, both the physical operation of machines as well as the "human factor" must be taken into consideration. The human factor includes the particular motions and movements a job requires, the effects of repetition and exhaustion, the inclination to take "short cuts" to make a task easier to perform, and the worker's particular knowledge of the hazard and the extent of his or her exposure to it.
 {¶ 26} In finding the evidence against substantial certainty of the injury Howard suffered to be "compelling," the trial court put great emphasis on the lack of prior injuries that operators of the band saw had suffered. However, Howard was not an operator but a "catcher" who performed a different task. Further, the record shows that while operators receive extensive training in using the saw safely, Howard had none. The two situations bear little direct comparison.
 {¶ 27} The court also found that Howard could not be exposed to risks of injury to which operators of the saw are exposed, making Howard's risk of injury even less because Howard "was merely assigned the duty of catching on the band saw and therefore had no reason to come within arms reach of the band saw." That finding necessarily rejects Howard's testimony that she was instructed by Reed to stand at the side of the wood table, within an arm's reach of the saw. The court improperly construed a conflict in the evidence against Howard.
 {¶ 28} The court also rejected Howard's contention that the direction she was given to stand near the saw was analogous to removal of a safety guard, because standing instead at the far end of the table prevents injuries from the saw. The court noted that the table was never moved. That is a distinction without a difference in relation to the implications that removal of a safety guard presents; that the employee was exposed to a greater danger because of the employer's deliberate act that diminished the value of a safety precaution. To the extent that standing at the far end of the wood table creates a safety precaution that benefits a catcher, the practical effect of instructing a catcher to stand within reach of the saw blade, as Howard says she was, amounts to removal of a safety guard for purposes of the rule ofFyffe v. Jeno's, Inc.
 {¶ 29} The court made no reference to the testimony of Dr. Gary Maul, Plaintiff's expert, who made the following points in his testimony:
 {¶ 30} 1. Plaintiff Howard was a temporary employee whose prior experience was janitorial work, and she was thus unfamiliar with manufacturing and its processes (T. 51);
 {¶ 31} 2. Howard should have been instructed on the operation of the band saw and the hazards that presents, but says she was not (T. 51);
 {¶ 32} 3. Band saws are one of the most dangerous pieces of equipment in a manufacturing facility and one of the leading causes of injury (T. 53);
 {¶ 33} 4. Howard was wearing gloves that when caught by the moving saw blade pulled her hand against the blade, while instruction manuals for band saws state that operators should not wear gloves or loose clothing for that reason, and the same would apply to secondary operators such as a "catcher" (T. 57-60);
 {¶ 34} 5. Howard was in close proximity to the moving saw blade where she says she was told by Reed, the operator, to stand, and she should have then been told what its hazards are but was not (T. 52);
 {¶ 35} 6. The signage posted on the front of the saw warning of danger informs the operator but not the catcher (T. 65) and is inadequate unless one knows how the band saw works (T. 68), and the signage should have explained just what hazards the saw presented (T. 69);
 {¶ 36} 7. The saw was not equipped with a safety guard that might have prevented Howard's injury (T. 78), though no form of guard would have absolutely protected her (T. 89);
 {¶ 37} 8. Instead of moving the materials by hand, Howard should have been provided with a "pusher stick" to move them away from the saw blade (T. 115);
 {¶ 38} 9. Howard should have been instructed to stand at the far end of the wood table (T. 100); and,
 {¶ 39} 10. Howard's position in close proximity to the moving saw blade, coupled with her lack of safety training and the fact that she wore gloves and moved that material away from the blade by hand, supports a conclusion that the injury Howard suffered was substantially certain to occur (T. 101, 113).
 {¶ 40} We have held that when the testimony of an expert witness puts the issue of substantial certainty of injury in dispute, the trial court errs when it grants summary judgment for the employer in a case of this kind. Linebaugh v. ElectricalControl systems, Inc. (Sept. 23, 1994), Montgomery App. No. 14412. Dr. Maul's testimony does that, but the trial court failed to take account of his evidence. Failure to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment constitutes reversible error. Murphyv. City of Reynoldsburg (1992), 65 Ohio St.3d 356.
 {¶ 41} The assignment of error is sustained. The summary judgment will be reversed and vacated, and the case will be remanded to the trial court for further proceedings on Howard's claim for relief alleging an employer intentional tort.
Brogan, J. And Fain, J., concur.
[1] Remarkably, in view of the meticulous detail of the facts both sides presented, there is no evidence of the dimensions of the wood table. However, it is agreed that the length of the table would have prevented Howard's injury had she been standing there to catch the materials Reed cut with the saw.