OPINION
{¶ 1} Plaintiff-appellant Debra Wilcox appeals from a summary judgment rendered against her on her employer-intentional-tort complaint against her employer, Paygro Company, Inc. Wilcox was injured in 1999 while she was inside a palletizer machine, trying to clear a jammed bag, and the machine activated. Wilcox brought this action alleging that her employer committed an intentional tort against her by directing her to operate the palletizer after an alarm had been de-activated. She contends that the trial court erred by rendering summary judgment against her, because there is a genuine issue of material fact precluding summary judgment. Although the issue is close, we agree. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 2} Wilcox testified that on the day she was injured she hit the emergency stop button to stop the palletizer before climbing up and then down into the machine to clear a jam. There is testimony that getting into the palletizer to clear a jam was a common occurrence, sometimes occurring five to fifteen times a day. A reasonable jury could infer that getting into the palletizer to clear a jam was a part of the job that the operators of the machine were required to do. While Wilcox was in the machine clearing the j am, the machine activated, injuring her. She does not know why the machine activated.
 {¶ 3} The palletizer came with an alarm that would sound a warning ten to fifteen seconds prior to reactivation when the machine was reactivated after having been shut off by the emergency stop button. That alarm had been disconnected at least ninety days before Wilcox's injury. There is evidence in the record from which a reasonable jury might infer that the management of Paygro was aware that the alarm had been disconnected. This evidence is Wilcox's following deposition testimony:
 {¶ 4} "Q. Is there anyone else that works out there that you think will testify that the alarm was unhooked?
 {¶ 5} "A. Oh, a lot of people know that alarm was unhooked.
 {¶ 6} "Q. Can you name any who knew that?
 {¶ 7} "A. I had a conversation with Mark.
 {¶ 8} "Q. Mark?
 {¶ 9} "A. I had a conversation with Harley about the alarm.
 {¶ 10} "Q. West?
 {¶ 11} "A. The old foreman, John Certain. We had a conversation. He knew the alarms wasn't hooked up. Other people that got in that machine. There's all kinds of employees.
 {¶ 12} "Q. Okay.
 {¶ 13} "A. They had taken other machines in the building and because they couldn't unhook them, they stuffed bags up in them so they wouldn't have to listen to them."
 {¶ 14} Wilcox testified that if she had heard the alarm, she would have been able to get out of the palletizer before it reactivated, thereby preventing her injury.
 {¶ 15} Wilcox brought this action against Paygro, alleging that Paygro committed an employer intentional tort. Paygro moved for summary judgment, contending that the evidence, even when viewed in a light most favorable to Wilcox, establishes that Paygro had not exposed Wilcox to a situation in which injury was substantially certain to occur. The trial court agreed, and rendered summary judgment in favor of Paygro. From the summary judgment rendered against her, Wilcox appeals.
 II {¶ 16} Wilcox's sole assignment of error is as follows:
 {¶ 17} "THE TRIAL COURT ERRED FN GRANTING SUMMARY JUDGMENT FN FAVOR OF THE DEFENDANT, AGAJNST THE PLAFNTIFF FN THAT REASONABLE MFNDS COULD CONCLUDE THAT PLAINTIFF'S FNJURTES WERE THE RESULT OF AN FNTENTIONAL TORT OF HER EMPLOYER AND THERE ARE SPECIFIC FACTS THAT RAISE A GENUINE ISSUE OF A MATERIAL FACT THAT THE EMPLOYER COMMITTED AN INTENTIONAL ACT AND THESE ARE QUESTIONS OF FACT FOR A JURY DETERMINATION."
 {¶ 18} "An appellate court reviews an award of summary judgment de novo. (Citations omitted). We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. (Citations omitted).
 {¶ 19} "Pursuant to Civil Rule 56(C), summary judgment is proper if'(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresner v. Burt, (19996),75 Ohio St.3d 280, 293, 662 N.E.2d 264. The non-moving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id." Doe v. Choices, Inc., Montgomery App. No. 21350,2006-Ohio-5757.
 {¶ 20} The Ohio Supreme Court "first recognized an intentional tort exception to the workers' compensation exclusivity doctrine by allowing employees to bring an intentional tort lawsuit against their employers."Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d482, 484,696 N.E.2d 1044, 1998-Ohio-408. An intentional tort `"is an act committed with the intent to injure another, or committed with the belief that such an injury is substantially certain to occur." Id. "An intentional tort by an employer is defined very narrowly where the employee is covered by Ohio's workers' compensation laws. Worker's compensation laws were implemented to compensate employees for injuries sustained in the workplace." Spates v. RichardE. Jones Associates (July 12, 1995), Montgomery App. No. 15057.
 {¶ 21} "In Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 1000, 522 N.E.2d 489, [the Ohio Supreme Court] held that the proof required to establish an intentional tort must be beyond that required to prove negligence or recklessness. Id. at paragraph six of the syllabus. [The Court] set forth a three-part test an employee must satisfy in order to prevail against his or her employer for an intentional tort. Id. at paragraph five of the syllabus. This test was modified in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, where [the Court] held that the employee must prove `(1) knowledge by the employer of the existence of a dangerous process, (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.' Id. at paragraph one of the syllabus." Hannah, supra.
 {¶ 22} "Where an employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As a probability that the consequences will follow further increases, and the employer knows that the injuries to the employee are certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, mere knowledge and appreciation of a risk-something short of substantial certainty — is not intent." Fyffe, at paragraph two of the syllabus.
 {¶ 23} "`[E]ven if an injury is foreseeable, and even if it is probable that the injury would occur if one were exposed to the danger enough times, `there is a difference between probability and substantial certainty.' (Internal citations omitted). * * * Accordingly, an intentional-tort action against an employer is not shown simply because a known risk later blossoms into reality. (Internal citations omitted). Rather, `the level of risk-exposure [must be] so egregious as to constitute an intentional wrong.'" Berge v. Columbus Community CableAccess, 136 Ohio App.3d 281, 309, 736 N.E.2d517.
 {¶ 24} Paygro cites Miko v. Delphi Chassis (Jan. 25, 2002), Montgomery App. No. 18940, for the proposition an employer's failure to equip a device — in that case, a forklift — with an audible warning device does not subject employees working near the forklift to a substantial certainty of injury where there is no evidence of prior injuries. In our view, that case is distinguishable. In the first place, that case involved an alleged failure to install a warning device, not the removal of a warning device. Furthermore, there was evidence in that case that no previous injuries had occurred, despite the fact that forklifts had been operated for years without audible warning alarms that would automatically sound upon the forklift being operated in reverse. In the case before us, the evidence establishes that the palletizer had been operated for at least ninety days after the deactivation of the audible alarm, without accident, but the evidence fails to establish a longer, accident-free period.
 {¶ 25} The issue in these cases is not whether an employer has exposed an employee to a substantial certainty of injury on a particular occasion, but whether it has exposed its employees to the substantial certainty of injury occurring at some point over a reasonable period of time. In our view, a reasonable fact finder, construing the evidence in this record in a light most favorable to Wilcox, could find that once the audible alarm signaling the reactivation of the palletizer was disabled, injury was substantially certain to occur to an employee, considering the ever-present danger of reactivation, and the fact that employees were required to hit the emergency stop button to clear a jam in the palletizer five to fifteen times a day. The fact that it could not be predicted on which particular day an unsignaled reactivation would occur does not mean that an unsignaled reactivation during the clearing of a jam was not substantially certain to occur at some time within the reasonable future, after the alarm was disabled, and a tragic injury was the all-but-inevitable consequence.
 {¶ 26} In this respect, we conclude that this case is similar toMoebius v. General Motors Corporation, 2002-Ohio-3918, Montgomery App. No. 19147, in which a five-second delay was instituted, without the knowledge of the employees operating a production line involving rotating spindles, between the time a safety cord was pulled, and the stopping of the line. An employee, accustomed to the immediacy of the stopping of the line, pulled the cord and reached in to purge a clogged spray paint gun. She was injured by the rotating spindles. As originally designed, the immediate stoppage of the line was a device that employees could use to protect themselves when it became necessary to reach into the production line of rotating spindles to purge a spray paint gun. Eliminating the immediate stoppage, without informing the employees, removed this safety feature.
 {¶ 27} In the case before us, it appears that Wilcox knew that the audible alarm had been disabled. There was nothing she could do about that to protect herself, however. It was a necessary part of her job to clear jams in the palletizer, and she testified that she did not know that she had the authority to cause a supervisor to effect a shutdown of the main power to all the machines in the vicinity, which was apparently her only alternative to relying upon the emergency stop button.
 {¶ 28} We view the case before us as also analogous to Howard v. JetCorr Classic, Inc., 2006-Ohio-415, Clark App. No. 05CA0068, in which we reversed a summary judgment for an employer who required a "catcher" at a band-saw to stand closer to the saw blade. We analogized that case to cases involving removal of a safety device, because the place the catcher had previously been trained to stand was a safe distance away from the blade. The plaintiff in that case presented an expert witness on the issue of substantial certainty that an injury would occur, perhaps to assist the finder of fact on the causal significance of the distance that the catcher was placed from the saw blade. In the case before us, a lay jury could be expected to understand the significance of the disabling of the audible alarm signaling the reactivation of the palletizer for an employee who was in the machine clearing a jam.
 {¶ 29} In short, we conclude that when the evidence in this record is viewed in a light most favorable to Wilcox, a reasonable mind might conclude that the disabling of the audible alarm signaling reactivation of the palletizer after its having been deactivated by the emergency stop button exposed an employee in Wilcox's position, who was required to enter the palletizer frequently to clear jams, to the substantial certainty of injury.
 {¶ 30} Wilcox's sole assignment of error is sustained.
 {¶ 31} Wilcox's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN, J, concurs.