{¶ 32} I agree with the trial court that the facts establish that Wilcox's injury was not substantially certain to occur. Wilcox testified that she performed the very task she performed when her injury occurred approximately 25 times before her injury, without incident. She testified that she knew that she could be injured were the machine to be reactivated while she was inside it. I cannot agree that Wilcox's testimony makes clear, as does the majority, that, in the absence of the alarm, there was nothing she could do to protect herself in the event the machine was reactivated while she was inside it. Wilcox testified as follows on the subject:
 {¶ 33} "Q. * * * Now, what we're looking at in the exhibit is the walkway. That's what I would refer to as the second level of the palletizer machine, but are you aware of the fact that on the first floor there's a main control switch alarm? It can be completely shut off?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. And did you know that before you were injured?
 {¶ 36} "A. No.
 {¶ 37} "Q. Okay.
 {¶ 38} "A. Well, I can say that I knew. We wasn't allowed in there. We didn't have the keys. The only people that were allowed in there was Harley and Jay.
 {¶ 39} "Q. Okay.
 {¶ 40} "A. And we were not allowed to get near that. So I knew they could shut off the main power in there, but we wasn't allowed to do it ourselves.
 {¶ 41} * * *
 {¶ 42} "Q. Is there anything about how to turn the machine off or how to turn the machine on that you didn't know on November 18th, 1999?
 {¶ 43} "A. No.
 {¶ 44} * * *
 {¶ 45} "Q. * * * And there is, right on the ground floor of the palletizer you were injured on, there's a big control box that has the main switch, isn't there?
 {¶ 46} "A. Yes.
 {¶ 47} "Q. * * * And if someone were to lock that switch off-
 {¶ 48} "A. They couldn't turn it on up there.
 {¶ 49} "Q. — you can press all the buttons you want?
 {¶ 50} "A. That's right.
 {¶ 51} "Q. But if it's shut off, it's shut off?
 {¶ 52} "A. That's right.
 {¶ 53} "Q. And you've told me you weren't trained, did you know you could do that even though they didn't train you?
 {¶ 54} "A. I knew that was the main power to the machines, but I didn't know as an
employee that you could just, we wasn't allowed in them boxes at all. We was not allowed to touch them in no way. There were only a few people that they allowed to get in those boxes.
 {¶ 55} "Q. Could you just ask Jay to do it?
 {¶ 56} "A. Yes, probably."
 {¶ 57} Wilcox knew where the main power switch was, knew that if someone locked it off that the machine could not reactivate, knew who had the authority to lock off the main switch and conceded that she could have asked "Jay" to lock it off.
 {¶ 58} I also find the cases upon which the majority relies to be distinguishable from the matter herein. In Moebius v. GeneralMotorsCorp., Montgomery App. No. 19147,2002-Ohio-3918, we determined that "it is arguable that when this safety device was altered to stop after a five-second delay, injury would be substantially certain to occur to those employees who were not educated and trained on the presence of this delay." Moebius placed her hand into a machine that did not stop running as it had in the past, due to the newly instituted delay, of which Moebius was unaware. Unlike in Moebius, Wilcox knew that the alarm had been disabled, she knew that she could be injured if the machine were reactivated, and she knew the location of, and who had access to, the main power switch. Further, Moebius' injury occurred immediately, the first time she placed her hand into the machine after her employer added the delay, confirming her injury's substantial certainty. Finally, Moebius' employer added the delay to increase production, while a Paygro employee deactivated the alarm because it annoyed him.
 {¶ 59} In Howard v. JetCorr Classic, Inc., Clark App. No. 05CA0068,2006-Ohio-415, we determined that the employer acted deliberately in exposing Howard to a greater danger, and that directing the employee to stand close to the saw amounted to the removal of a safety device. Unlike Howard, Wilcox did not provide the court with expert testimony on the issue of the substantial certainty of her injury. The immediacy of Howard's injury, as in Moebiiis, further confirmed that it was substantially certain to occur. I agree with the majority that a lay jury would indeed understand that the disabling of the alarm is significant. The absence of expert testimony that Paygro acted with intent, and not simply negligence or recklessness, and the absence of expert testimony that Wicox's injury was not merely foreseeable or even probable, but substantially certain to occur, however, distinguishes our decision in Howard from the matter herein.
 {¶ 60} I agree that directing an untrained employee to place her hands close to a moving blade, and altering the function of a machine without an employee's knowledge, both rise to the level of intentional torts, but I cannot conclude that Paygro's conduct does so. The alarm had been disabled for 90 days without incident, suggesting that Wilcox's injury was arguably foreseeable and perhaps even probable, but not substantially certain to occur.